65 A.3d 141

**Joan J. STICKLEY**

v.

**STATE FARM FIRE AND CASUALTY COMPANY.**

**No. 48, Sept. Term, 2012.**

Court of Appeals of Maryland.

April 25, 2013.

348

**350**

Gary R. Alexander, (S. Whitney Cleaver of Alexander & Cleaver, P.A., Fort Washington, MD), on brief, for Petitioner.

Michael J. Budow, (Richard E. Schimel of Budow and Noble, P.C., Bethesda, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

Joan Stickley ("Petitioner") was a passenger in a motor vehicle accident, in which the driver of the vehicle, her husband, was killed, and in which she suffered serious injuries. At the time of the accident, Petitioner and her husband had a motor vehicle liability insurance policy with State Farm Mutual Automobile Insurance Company ("State Farm Auto"), and an umbrella policy with State Farm Fire and Casualty Company ("Respondent") (collectively, "State Farm"). The umbrella policy contained a household exclusion,[1] which formed the

---

1. A household exclusion generally excludes coverage for bodily injury to members of the insured's family or household when the insured is at fault. *Cf. State Farm Mut. Auto. Ins. Co. v. Briscoe*, 245 Md. 147, 150–51, 225 A.2d 270, 271–72 (1967)(analyzing an insurer's obligation to defend an insured when the applicable insurance policy contains a

basis for State Farm's denial of Petitioner's claim under the umbrella policy. Petitioner challenges the household exclusion's validity in light of Maryland Code (1997, 2002 Repl.Vol., 2005 Cum.Supp.), § 19–504.1 of the Insurance Article (" § 19–504.1"),[2] which requires an insurer to offer liability coverage for claims of family members in the same amount of liability coverage for claims of nonfamily members under a "policy or binder of private passenger motor vehicle liability insurance." Petitioner claims that she and her husband were never offered equal coverage for family members under their umbrella policy, which contained motor vehicle coverage. Therefore, according to Petitioner, the household exclusion in their umbrella policy is void.

The issue before this Court is the proper interpretation of the phrase "private passenger motor vehicle liability insurance" as contained in § 19–504.1. Specifically, we are asked whether an umbrella policy fits within that definition such that an insurer must offer an insured liability coverage for family members in the same amount as the liability coverage for nonfamily members. We shall hold that the umbrella policy does not fit within the definition of "private passenger motor vehicle liability insurance" as contained in § 19–504.1.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2008, Petitioner was riding as a passenger in a vehicle driven by her husband when, according to Petitioner, her husband negligently drove into an intersection and was struck by another vehicle. As a result of the accident, Peti-

household exclusion); Andrew Janquitto, *Maryland Motor Vehicle Insurance* § 7.11(B) (3d ed.2011). This Court has explained that the purpose of the household exclusion has traditionally been to prevent collusion claims by family members. *See Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 453, 849 A.2d 539, 549 (2004); *Briscoe*, 245 Md. at 151, 225 A.2d at 271; Janquitto, at § 7.11(B).

2. The current version of § 19–504.1 is located in the 2011 Replacement Volume. Md.Code (1997, 2011 Repl.Vol.), § 19–504.1 of the Insurance Article. We note that no substantive changes have been made to the law since its original codification.

tioner's husband was killed and Petitioner suffered serious injuries.

At the time of the accident, Petitioner and her husband had several policies of insurance issued by State Farm. They had a motor vehicle liability policy with coverage of $100,000 per person and $300,000 per accident with State Farm Auto. Mrs. Stickley and her husband also had a Personal Liability Umbrella Policy with personal liability and uninsured motorist coverage of $2,000,000 with Respondent, a subsidiary of State Farm Auto. According to Petitioner, the Stickleys purchased both policies from the same State Farm agent.

The umbrella policy was originally purchased in the 1980's and issued by State Farm. It provided coverage for bodily injury, personal injury,[3] and property damage. On the "Declarations Page," the umbrella policy required the insured to maintain specific underlying insurance, including automobile liability insurance. The umbrella policy also included the following language under the "Exclusions" and "Definitions" sections, respectively:

> **EXCLUSIONS**
>
> There is no coverage under this policy for any:
>
> 13. **bodily injury** or **personal injury** to any **insured** as defined in part a. or b. of the definition of **insured,** including any claim made or suit brought against any **insured** to share damages with or repay someone else who may be obligated to pay damages because of such **bodily injury** or **personal injury** [.]
>
> **DEFINITIONS**
>
> 6. "**insured**" means:
>
> a. **you** and **your relatives** whose primary residence is **your** household;

---

**3.** The "personal injury" section of the umbrella policy included coverage for false arrest, false imprisonment, wrongful eviction, wrongful detention of a person, abuse of process, malicious prosecution, libel, slander, defamation of character, and invasion of a person's right of private occupancy by physically entering into that person's personal residence.

b. any other human being under the age of 21 whose primary residence is **your** household and who is in the care of a person described in 6.a[.]

12. **"relative"** means any person related to **you** by blood, adoption, or marriage.

(Emphasis in original).

After the accident, Petitioner filed a claim under their automobile liability policy for injuries and losses she sustained as a result of the March 2008 accident. State Farm offered Petitioner the full $100,000 in liability coverage provided under the policy. Petitioner also made a claim for bodily injury under the umbrella policy. State Farm denied the claim, however, due to the household exclusion included in the policy which denied payment of damages for bodily injury or personal injury resulting from the negligence of another insured household member.

On February 1, 2010, Petitioner filed a Complaint for Declaratory Judgment in the Circuit Court for Montgomery County. Petitioner sought to have the household exclusion in the umbrella policy declared void. To support her claim, Petitioner cited § 19–504.1, enacted in 2004, that requires an insurer to offer its insured, under a policy or binder of private passenger motor vehicle liability insurance, liability coverage for claims made by family members in the same amount as liability coverage for claims made by nonfamily members. The statute only applies when the liability coverage in the private passenger motor vehicle liability insurance policy exceeds the State-mandated minimum amount of coverage.[4] Petitioner argued that their Personal Liability Umbrella Policy is private passenger motor vehicle liability insurance, and "the exclusion, which was included in the policy prior to 2004 and

---

4. Under § 17–103 of the Transportation Article, the minimum amount of coverage in a vehicle liability insurance policy is $30,000 per person, and $60,000 per accident for claims for bodily injury or death. Md. Code (1977, 2012 Repl.Vol.), § 17–103 of the Transportation Article. At the time of the policy renewal and the accident in the present case, the minimum required amount of coverage was $20,000 per person, and $40,000 per accident.

never signed off [ ] by the insureds, [is therefore] void" in light of the statute. Subsequently, both Petitioner and Respondent filed Cross–Motions for Summary Judgment.

On March 30, 2011, a hearing was held in the Circuit Court for Montgomery County. The trial judge ruled in favor of State Farm and granted its Motion for Summary Judgment. Finding "absolutely no ambiguity in Section 19–504.1[,]" the judge stated "that the umbrella policy in this case is not a part of, referred to, connected to, or the same as, a private passenger motor vehicle liability insurance [policy]." The trial judge reasoned:

The Court interprets and reads 19–504.1 literally, and it indicates that a policy ... it doesn't say where there is other coverage. It says, a policy of private passenger motor vehicle liability insurance, liability coverage for claims made by family members, in the same amount as liability coverage for claims made by non-family members under the policy. That is, the insurer shall offer. And in this case, the [$]100,000 pertains to her the same as it would anyone else.

In the particular case of the umbrella, that's a separate animal. It has a lot of coverage. It covers the entire waterfront, but it doesn't make it a private passenger motor vehicle liability insurance coverage policy. That's so specific that the Court doesn't even have to strain to guess. It defies credulity to say that it's ambiguous. It's about as clear as it can be.

The judge further indicated that the General Assembly could have linked umbrella policies and motor vehicle policies together by specifically referencing "any type of policy which affords coverage in any motor vehicle accident" in the statute. As the judge noted, however, the statute was not written that way, and "[o]ur job is to look at what the law says."

Petitioner appealed the trial court's ruling to the Court of Special Appeals. The intermediate appellate court issued its reported opinion affirming the Circuit Court's ruling. *Stickley v. State Farm Fire & Cas. Co.*, 204 Md.App. 679, 682, 42 A.3d 696, 697 (2012). According to the intermediate appellate court, the General Assembly enacted the statute at issue,

§ 19–504.1, "to ensure that, when obtaining a policy of private passenger motor vehicle liability insurance with limits in excess of the statutory minimum, the insured would have a right to obtain that policy without a household exclusion." 204 Md.App. at 696, 42 A.3d at 706. In applying the "public policy considerations leading up to the enactment of the statute" the court reasoned that interpreting the phrase "private passenger motor vehicle liability insurance" as applying to *any* policy that contains, even in part, some motor vehicle liability insurance, "would be a colossal leap[.]" 204 Md.App. at 696–98, 42 A.3d at 706–07. Further, the court noted the title given to Article 19, Subtitle 5, *"Motor Vehicle Insurance—Primary Coverage "* (emphasis added), and analyzed the text of other sections in the Subtitle to support the conclusion that § 19–504.1 must have referred to primary policies alone, and not umbrella policies. 204 Md.App. at 695, 698–700, 42 A.3d at 705, 707–08. Finally, in the court's view, "[t]he coverage under a policy of 'private passenger motor vehicle liability insurance' focuses on the scheduled motor vehicles, which is also the focus of the mandatory insurance requirements[,] [whereas] [t]he coverage under an umbrella policy focuses on the insured." 204 Md.App. at 700, 42 A.3d at 708.

Subsequently, Petitioner asked that we review the case. We granted *certiorari* in *Stickley v. State Farm Fire & Cas. Co.,* 427 Md. 606, 50 A.3d 606 (2012), to answer the following questions:

1. Whether the Court of Special Appeals erred in concluding that Insurance Code § 19–504.1 does not apply to excess of umbrella policies.

2. Whether a personal liability umbrella policy that includes motor vehicle liability insurance constitutes "private passenger motor vehicle liability insurance" as contemplated by Insurance Code § 19–504.1.

## DISCUSSION

### I.

The issue in the present case is the correct interpretation of § 19–504.1, which provides:

§ 19–504.1. **Coverage for claims of family members.**

(a) *Applicability.*—This section applies only when the liability coverage under a policy or binder of private passenger motor vehicle liability insurance exceeds the amount required under § 17–103 of the Transportation Article.

(b) *In general.*—An insurer shall offer to the first named insured under a policy or binder of **private passenger motor vehicle liability insurance** liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy or binder.

(c) *Form.*—(1) An offer made under this section shall be made on the form that the Commissioner requires.

(2) The form may be part of the insurance application, policy, contract, or binder.

(3)The form shall clearly and concisely explain in 10 point boldface type:

(i) the nature, extent, benefit, and cost of the amount of liability coverage for claims made by family members that is available to the first named insured; and

(ii) that an insurer may not refuse to underwrite a first named insured because the first named insured requests or elects the liability coverage for claims made by family members in an amount equal to the coverage provided for claims made by nonfamily members.

(d) *Prohibitions against insurers.*—(1) An insurer may not refuse to underwrite a first named insured because the first named insured requests or elects the liability coverage for claims made by family members in an amount equal to the coverage provided for claims made by nonfamily members.

(2) An insurer that violates this subsection is subject to the penalties provided in §§ 4–113 and 4–114 of this article.

[Emphasis added].

As noted by the intermediate appellate court, the Stickleys' umbrella policy was renewed after the effective date of the

statute and, "thus, is subject to § 19–504.1 if it comes within its substantive terms." *Stickley,* 204 Md.App. at 685, 42 A.3d at 699. We must assess, therefore, whether an umbrella policy is a policy of "private passenger motor vehicle liability insurance," thereby requiring the insurer to offer liability coverage for family members in the same amount as coverage for nonfamily members.

Petitioner argues that the General Assembly's "interest in protecting an insured's ability to recover damages in excess of the statutory minimums evidences an intent for [§ 19–504.1] to include excess liability policies." By only affording Petitioner the benefit of her primary motor vehicle coverage, Petitioner argues, she is being denied the extra protection she sought in the umbrella policy, which contradicts the purpose and language of the statute. With regard to the plain meaning of the statute, Petitioner's central argument is that because the umbrella policy contained motor vehicle liability insurance coverage, it is considered private passenger motor vehicle liability insurance as contemplated by § 19–504.1. Petitioner also argues that because the umbrella policy in the instant case required Petitioner to carry underlying motor vehicle insurance, "this requirement, [ ] intrinsically linked the two policies together making the motor vehicle coverage of the [u]mbrella [p]olicy an extension of the underlying policy, and, thus, the [u]mbrella [p]olicy would constitute private passenger motor vehicle liability insurance."

Positing several textual arguments with reference to the uninsured motor vehicle statutes, Md.Code (1997, 2002 Repl. Vol.), §§ 19–509, 19–510 of the Insurance Article, Petitioner contends that although the General Assembly distinguished between underlying policies and umbrella policies in the uninsured motorist statutes, it did not do so in § 19–504.1 because the General Assembly intended both underlying motor vehicle policies and umbrella policies to be incorporated into § 19–504.1. Finally, Petitioner reviews Maryland legislative history and precedent to argue, in the alternative, that household exclusions in umbrella policies are against Maryland public policy.

To the contrary, Respondent maintains that the umbrella policy in question is not a policy of "private passenger motor vehicle liability insurance" within the meaning of the statute, and "[f]or this reason, State Farm was not obliged to provide coverage where neither the policy nor [§ 19–504.1] required it to do so." Looking at the plain meaning of the statute, Respondent claims that umbrella policies are broad-based, general, *personal* liability policies that follow the insured, which is separate and distinct from a policy of private passenger motor vehicle liability insurance that covers the motor vehicle and anyone with permission to operate it. Along these lines, Respondent argues that the fact that certain policy coverages overlap "does not transform one type of policy into another for purposes of statutory interpretation." Rather, Respondent contends, the General Assembly's objective in providing automobile liability coverage for claims of family members equal to others above the statutory minimum can be accomplished through the purchase of higher limits of automobile liability insurance. According to Respondent, "[s]uch additional coverage should not be created by way of a strained interpretation of the nature of an umbrella policy to fit it within the definition of [ ] 'private passenger motor vehicle liability insurance [ ]'. . . ." Finally, Respondent asserts that by enacting § 19–504.1, the General Assembly "chose not to abrogate the household exclusion altogether above statutory minimum coverage, but, [elected,] instead to offer the insured the opportunity, for an additional premium, to purchase liability limits for family members equal to that of nonfamily members."

▬▬▬ The legal issue in this case is one of statutory interpretation. As we stated in *Bowen v. City of Annapolis*, 402 Md. 587, 613, 937 A.2d 242, 257–58 (2007) (citations and quotations omitted):

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.

In construing the plain language, a court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. Statutory text should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. . . .

"It is also clear that we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Centre Ins. Co. v. J.T.W.*, 397 Md. 71, 81, 916 A.2d 235, 240–41 (2007) (citations and quotations omitted). Additionally, we have stated:

We analyze the contested provisions of Maryland's Insurance Article in the context of the statutory scheme and construe the plain language so that the various sections of the article do not conflict with one another. . . . In addition, the meaning of the plainest language is controlled by the context in which it appears. As this Court has stated, because it is part of the context, related statutes or a statutory scheme that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. Thus, not only are we required to interpret the statute as a whole, but, if appropriate, in the context of the entire statutory scheme of which it is a part.

*Id.* (citations and quotations omitted).

We begin by looking at the plain meaning of the phrase "policy or binder of *private passenger motor vehicle liability insurance.*" (emphasis added). By its terms, a private passenger motor vehicle liability insurance policy refers to a specific type of *motor vehicle liability insurance* policy. These insurance policies have been held by this Court to "attach[ ] to automobiles and not to individuals." *Neale v. Wright*, 322 Md. 8, 16, 585 A.2d 196, 199–200 (1991). By contrast, a *personal* liability umbrella policy includes coverage for a myriad of losses suffered by the insured. This might include coverage for losses resulting in "personal injury," such as false arrest, wrongful eviction, libel, and defamation of character. The

personal liability umbrella policy might also include protection against excess judgments of third parties with regard to the operation of a motor vehicle. Therefore, umbrella policies attach generally to the insured, whereas private passenger motor vehicle liability insurance policies attach to the motor vehicle and protect against injuries and/or damages resulting from the operation of the motor vehicle.

Additionally, a motor vehicle liability insurance policy is a type of primary policy that is required in the State. For example, as explained by one scholar, "an individual's automobile liability and homeowner's policies are [types of] primary insurance policies." Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues*, 24 Tort & Ins. L.J. 715, 716 (1989). Primary policies of motor vehicle liability insurance "attach[ ] immediately upon the happening of the occurrence . . . giv[ing] rise to liability[,]" and have been required with a mandated minimum amount of coverage since the General Assembly revised the State's automobile insurance laws in 1972. *See State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 635–36, 516 A.2d 586, 588 (1986)(discussing the General Assembly's mandated compulsory motor vehicle liability insurance law); *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md.App. 72, 117, 699 A.2d 482, 504 (1997) (citations and quotations omitted) (defining "primary insurance"); *see also* Md.Code (1977, 2002 Repl.Vol.), § 17–103 of the Transportation Article (noting that "the form of security required . . . is a vehicle liability insurance policy" in certain minimum amounts); Md.Code (1977, 2002 Repl.Vol.), § 17–104 of the Transportation Article (explaining that evidence of the state-required security is a prerequisite to obtaining registration of a motor vehicle). By statute, an insurer may issue, sell, or deliver such motor vehicle liability insurance policies with coverage above the minimum required amount. Md.Code (1997, 2002 Repl.Vol.), § 19–502(b) of the Insurance Article.

By contrast, an umbrella policy is a supplemental form of insurance that is distinguishable from more specific primary policies, such as motor vehicle liability insurance or home-

owner's insurance. For example, *Black's Law Dictionary* defines an "umbrella policy" as "[a]n insurance policy covering losses that exceed the basic or usual limits of liability *provided by other policies.*" *Black's Law Dictionary* 811 (7th ed.1999) (emphasis added). Moreover, "umbrella insurance" is specifically referred to as "[i]nsurance that is *supplemental,* providing coverage that exceeds the basic or usual limits of liability." Black's Law Dictionary 808 (7th ed.1999) (emphasis added). Under either definition, therefore, umbrella policies are described not merely as an extension of the primary policy, but rather as a distinct and different form of coverage.[5] *Cf. Megonnell v. U.S. Auto. Assoc.,* 368 Md. 633, 796 A.2d 758 (2002) (contrasting an insured's primary motor vehicle liability policy from a separate umbrella policy).

Not only are the basic definitions and coverages different in motor vehicle liability policies and umbrella policies, but the purpose of both forms of coverage are different. Although primary insurance attaches "upon the happening of the occurrence that gives rise to liability ... [e]xcess insurance[,] [by contrast,] attaches only after a predetermined amount of primary coverage has been exhausted." *Empire*

---

**5.** An umbrella policy "generally provides two types of coverage: (1) standard ... excess coverage; and (2) broader coverage than is provided by the underlying insurance...." Michael M. Marick, *Excess Insurance: An Overview of General Principles and Current Issues,* 24 Tort & Ins. L.J. 715, 718–19 (1989).

For example, an individual who purchases separate policies of primary insurance covering his automobile and homeowner's liability may also obtain an umbrella policy providing coverage in excess of each of the two primary policies. While the standard homeowner's policy covers the insured's personal liability for a third party's "bodily injury," the standard personal umbrella policy expands the insured's coverage to include claims of "personal injury" (a different type of coverage which may provide coverage for libel, slander, malicious prosecution and various other offenses). Thus, if a libel lawsuit is brought against the insured, the umbrella carrier would effectively become the primary carrier (i.e., "drop down") for purposes of the defense and indemnification of the insured. For the insured's automobile liability, however, the umbrella policy would apply in the same manner as a[n] ... excess policy. *Id.*

*Fire & Marine Ins. Co.*, 117 Md.App. at 117, 699 A.2d at 504 (citations and quotations omitted). In fact, umbrella policies generally "require the existence of a primary policy as a condition of coverage[,]" because the umbrella coverage only "kicks in" after the primary policy is exhausted to protect against *catastrophic loss. Couch on Insurance 3d* § 220:32 (2005)(emphasis added). Moreover, one scholar noted that umbrella policies are "clearly designed to be comprehensive *excess* policies." 8C Appleman, *Insurance Law and Practice* § 5071.65 (1981)(emphasis added). Appleman points out:

> Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. Assuming one's automobile and homeowner's policies have liability limits of $100,000 or even $500,000, the umbrella policy may pick up at that point and cover for an additional million, five million, or ten million. It may assume as a primary carrier certain coverages not included elsewhere, such as invasion of privacy, false arrest, etc., but there is no intention to supplant the basic carriers on the homeowners or automobile coverages. Therefore, these should not even enter into our current consideration.

*Id.*

As we have explained in the past, we interpret the plain meaning of a statute in light of the context in which it appears. *See Centre Ins. Co.*, 397 Md. at 85, 916 A.2d at 243 (applying a provision of the Insurance Article in context of the statutory scheme of its Title). "Our ultimate objective of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *See Md. Econ. Dev. Corp. v. Montgomery Cnty.*, 431 Md. 189, 64 A.3d 478 (2013) (citations and quotations omitted). An examination of the statute in context provides further indication that the General Assembly did not intend "private passenger motor vehicle liability insurance" to include umbrella policies. The subtitle at issue in the present case, *"Subtitle 5. Motor Vehicle Insurance—**Primary***

*Coverage* "[6] (emphasis added) includes other statutes that refer generally to motor vehicle insurance policies providing primary coverage. By including § 19–504.1 within this subtitle, the General Assembly demonstrated its intention to address household exclusions in primary policies. In § 19–504, for example, the term "motor vehicle liability insurance policy" is used to discuss the minimum amount of coverage required in a primary policy. The statute states that "[e]ach motor vehicle liability insurance policy ... shall provide the minimum liability coverage specified in Title 17 of the Transportation Article." Md.Code (1997, 2002 Repl.Vol.), § 19–504 of the Insurance Article. It would be illogical to interpret the phrase "motor vehicle liability insurance policy" in this statute as referring to umbrella policies, because umbrella policies, by definition, are supplemental and serve as an excess form of coverage to motor vehicle primary policies. By contrast, § 19–504 discusses *minimum* liability coverage. The same reasoning would apply in § 19–505, which discusses the required *minimum* amount of personal injury protection ("PIP") coverage in a "motor vehicle liability insurance policy." Md.Code (1997, 2002 Repl.Vol.), § 19–505 of the Insurance Article. As such, examining the language of the statute in context supports the proposition that a policy of "private passenger motor vehicle liability insurance" refers to a primary motor vehicle liability insurance policy, and does not extend to include an umbrella policy.

In support of Petitioner's argument, that § 19–504.1 must include umbrella policies, Petitioner cites to the uninsured motorist ("UM") statutes in the Insurance Article. Md.Code (1997, 2002 Repl.Vol.), §§ 19–509, 19–510. First, Petitioner contends that although Title 19, Subtitle 5 refers to "Primary Coverage," one of the UM statutes that falls within that section, § 19–509(h)(1), has been interpreted to apply to umbrella policies, thereby showing a legislative intent to treat

---

**6.** We note that the phrase "Primary Coverage" as it appears in Subtitle 5 was placed in the statute by the General Assembly. *See* Chapter 11 of the Acts of 1996 at 495; Chapter 73 of the Acts of 1972 at 281, 304 (as enacted).

umbrella policies as motor vehicle liability insurance. *Cf. Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 152–53, 634 A.2d 28, 36 (1993)(explaining an insurer's option to provide UM coverage under an umbrella policy). Unlike other language contained in Title 19, Subtitle 5, however, § 19–509(h)(1) explicitly refers to policies that are different in kind from primary policies. For example, the language of the statute itself discusses policies whose *"primary purpose[ ]* provides coverage in excess" of other forms of insurance. Md.Code (1997, 2002 Repl.Vol.), § 19–509(h)(1) of the Insurance Article (emphasis added). By its own terms, therefore, § 19–509(h)(1) explicitly distances itself from the primary motor vehicle policies discussed elsewhere in the section.[7] Further, by contrast, § 19–504.1, shows no indication that it applies to policies whose *primary purpose* is to provide excess coverage. Rather, it refers to a "policy or binder of private passenger motor vehicle liability insurance" with liability coverage exceeding the minimum amount of coverage required.

Petitioner also directs us to the UM statutes to argue that where "[t]he Maryland Legislature distinguished between un-

---

7. One of the provisions that § 19–509(h)(1) may be differentiated from is § 19–509(e)(2), another provision within the UM statute, which employs similar language to § 19–504.1. Whereas § 19–509(h)(1) states that an insurer *may* include UM coverage as provided for in § 19–509, § 19–509(e)(2) states that the UM coverage, under a *private passenger motor vehicle liability insurance policy, shall* equal the amount of liability coverage provided under the policy. As our colleagues on the Court of Special Appeals explained, interpreting the phrase *"private passenger motor vehicle liability insurance policy "* in § 19–509(e)(2) as inclusive of umbrella policies would be inconsistent with § 19–509(h)(1). This is so because § 19–509(h)(1), which refers to excess and umbrella policies, is a permissive UM statute, whereas § 19–509(e)(2), referring to private passenger motor vehicle policies, is a mandatory UM statute. *See Stickley v. State Farm Fire & Cas. Co.,* 204 Md.App. 679, 699–700, 42 A.3d 696, 707–08 (2012). Therefore, it would be inconsistent to interpret § 19–509(e)(2), as *requiring* an umbrella policy to provide UM coverage in the same amount as its liability coverage, because § 19–509(h)(1), which refers to umbrella policies, is a permissive UM statute. We do not read statutes to be inconsistent with each other. Nor do we read statutory text to render a word, clause, sentence, or phrase superfluous or nugatory. *See Bowen v. City of Annapolis,* 402 Md. 587, 613, 937 A.2d 242, 257–58 (2007).

derlying motor vehicle policies and umbrella policies in the [UM] statute and chose not to do the same thing in the family use exclusion statute [§ 19–504.1] ... the family use exclusion must be read to include all motor vehicle policies, including umbrella policies...." As we discussed above, however, the plain meaning of the phrase "private passenger motor vehicle liability insurance" does not include umbrella policies and "[i]n construing the plain language, a court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute." *Bowen v. City of Annapolis,* 402 Md. at 613, 937 A.2d at 257–58 (citations and quotations omitted). Moreover, Courts will not engage in "a forced or subtle interpretation [in an attempt to] extend[ ] or limit[ ] a statute's meaning." *Hastings v. PNC Bank, NA,* 429 Md. 5, 36, 54 A.3d 714, 732 (2012) (citations omitted). Therefore, we do not read into the General Assembly's actions beyond what the General Assembly has unambiguously codified.

Additionally, in interpreting a statute, we do not construe it to reach a result that is unreasonable, illogical, or inconsistent with common sense. *Md.—Nat'l Capital Park & Planning Comm'n v. Anderson,* 395 Md. 172, 182, 909 A.2d 694, 700 (2006) (citations and quotations omitted). Under this common sense approach, we note that the fundamental difference between umbrella and motor vehicle policies is underscored by the difference in premiums charged for the different coverages. As noted in *Couch on Insurance 3d* § 220:32 (2005):

The intent of excess and umbrella policies to serve a different function from primary insurance policies with "other insurance" clauses can be discerned from the fact that different rate structures apply to excess and umbrella policies on the one hand, and primary policies with other insurance clauses on the other. In general, umbrella policy premiums are relatively small in relation to the amount of risk so that the company cannot be expected to prorate with other excess coverages; and public policy should not demand that this be done.

*Id.* (citations and quotations omitted). Common sense also demonstrates that the Stickleys' umbrella policy differed from policies of private passenger motor vehicle liability insurance. For instance, the Stickleys' umbrella policy was specifically titled "*Personal* Liability Umbrella Policy" (emphasis added), indicating that the purpose of the umbrella policy was to provide coverage for the insured, as opposed to attaching primarily to the motor vehicle. Moreover, the Stickleys' umbrella policy required underlying coverage of automobile liability, recreational motor vehicle liability, personal residential liability, and watercraft liability, further indicating a fundamental distinction between the underlying primary policy and the supplemental, excess umbrella policy. In fact, such a requirement is typical of supplemental umbrella and excess policies. *See Couch on Insurance 3d* § 220:32 (2005) (noting that "[b]oth true excess and umbrella policies require the existence of a primary policy as a condition of coverage").[8]

## II.

 Next, we determine whether, on the facts of this case, enforcing the household exclusion in the Stickleys' umbrella policy is against public policy, and, as such, should be voided.

 "As a general rule, parties are free to contract as they wish." *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 76, 854 A.2d 879, 885 (2004) (citations and quotations omitted). Although the Court will generally allow parties to contract freely, "[a] clause in an insurance policy, which is contrary to the public policy of this State, as set forth in ... the Insurance Code or other statute, is invalid and unenforceable." *State Farm v. Nationwide*, 307 Md. at 636, 516 A.2d at 588

---

8. We note that both Petitioner and Respondent cite to foreign jurisdictions as guidance for interpretation of § 19–504.1. As the Court of Special Appeals noted, however, "the case law from other jurisdictions [is] of limited use because of differences in legal requirements and differences in statutory language." *Stickley*, 204 Md.App. at 686, 42 A.3d at 699–700. Moreover, the proper interpretation of § 19–504.1 may be resolved by looking at the plain meaning of the statute and Maryland law. *Id.*

(citations and quotations omitted); *see also Jennings v. Gov't Employees Ins. Co.*, 302 Md. 352, 356–62, 488 A.2d 166, 168–71 (1985) (citations and quotations omitted) (noting that a household exclusion that excluded all liability coverage for injury to the insured and members of the insured's household was void as against public policy mandating compulsory automobile liability insurance). We note, however, that a "contractual provision that violates public policy is invalid ... only to the extent of the conflict between the stated public policy and the contractual provision." *State Farm v. Nationwide*, 307 Md. at 643, 516 A.2d at 592 (citations omitted).

In the present case, the public policy with regard to household exclusions requires the insurer to *offer* the insured liability coverage for family members in the amount equal to that of nonfamily members in a private passenger motor vehicle liability insurance policy. It would be a violation of public policy, therefore, to enforce a household exclusion in a situation where an insured has not offered coverage for claims of family members equal to that for nonfamily members under a private passenger motor vehicle liability policy exceeding the minimum amount of coverage. "To permit the 'household exclusion' to operate [in the event the insurer has not offered such liability coverage] ... would be to deprive injured persons of the protection which the Legislature intended to provide, and would violate public policy." *See State Farm v. Nationwide*, 307 Md. at 643, 516 A.2d at 592 (citations and quotations omitted). The General Assembly, however, has not shown an intent to abrogate household exclusions altogether above statutory minimum coverage. Rather, in enacting § 19–504.1, the General Assembly chose to offer the insured the opportunity to purchase liability limits for family members equal to that for nonfamily members. *Cf. Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 450, 849 A.2d 539, 547 (2004) (noting that "if the General Assembly had intended something closer to complete insurance recovery for all victims, they [could] have said so ...").

We explained in *Allstate Ins. Co. v. Hart* that "the invalidity of household exclusion clauses in motor vehicle insurance

policies" is based upon specific statutory provisions. 327 Md. 526, 532–33, 611 A.2d 100, 103 (1992). Therefore, with regard to the household exclusion, "[w]e will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy would be." *Stearman*, 381 Md. at 454–55, 849 A.2d at 550. "The principle of leaving the creation of public policy to the Legislature is even stronger in a case such as the present one, where the public policy in question is one created by the Legislature in the first instance." *Id.* We hold, therefore, that "[s]o far as the public policy evidenced by the compulsory insurance law is concerned," the household exclusion in the present case is a valid and enforceable contractual provision. *See State Farm v. Nationwide*, 307 Md. at 644, 516 A.2d at 592.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY THE COSTS.**