## NATURAL RESOURCES

**FOREST CONSERVATION ACT – WHETHER LOCAL JURIS-
DICTIONS MAY ENACT PROGRAMS WITH CONSERVATION
THRESHOLDS AND REFORESTATION RATIOS THAT ARE
MORE STRINGENT THAN STATE LAW.**

October 21, 2015

*The Honorable Kumar P. Barve*
*Chair of the House Environment and*
   *Transportation Committee*
*The House of Delegates of Maryland*

You have asked for our opinion about the degree to which local jurisdictions may enact forest conservation programs that are more stringent than the Maryland Forest Conservation Act ("FCA" or "Act"), Md. Code Ann., Nat. Res. ("NR") §§ 5-1601 through 5-1613. Specifically, you ask two questions:

- May a local jurisdiction adopt an ordinance under the state Forest Conservation Act that requires no net loss of forest from development and higher levels of reforestation and afforestation than under the thresholds specified in NR § 5-1606 or that exceed other requirements of the Forest Conservation Act or the Department of Natural Resources' model ordinance?

- May a local jurisdiction adopt other more stringent provisions in an ordinance under the state Forest Conservation Act without the Department of Natural Resources requiring an explanation or justification as to why each of that ordinance's provisions are more stringent than the Act or model ordinance, including such items as greater protection of forested stream buffers, steep slopes, highly erodible soils, and larger trees?

It is our understanding that the City of Annapolis is contemplating the enactment of a forest conservation program with standards that are more stringent than those in the Act and that its efforts are being complicated by uncertainty on these questions.

In our opinion, local jurisdictions may enact forest conservation programs with requirements and standards that are more stringent than those set forth in the Forest Conservation Act. Accordingly, local jurisdictions may require development projects to meet a "no net loss" requirement and levels of reforestation and afforestation that are more protective than the standards and requirements set forth in the state law. If a local government elects to do so, it is not required to justify the greater level of protection, but the Department of Natural Resources ("DNR" or "the Department") may require the local jurisdiction to explain how its program is consistent with the intent, requirements, and standards of the Act.

# I

## Background

### A. *The Forest Conservation Act Statutory Scheme*

The Forest Conservation Act provides minimum requirements for forest conservation that apply when someone develops land in Maryland. *See generally* 77 *Opinions of the Attorney General* 127 (1992) (describing statute); 86 *Opinions of the Attorney General* 72 (2001) (same). Subject to several enumerated exceptions, the Act applies to any project involving the development of 40,000 square feet or more that requires a subdivision plan, grading permit, or sediment control permit. NR § 5-1602(a). The Act delegates primary responsibility for implementation to the localities; each unit of local government with planning and zoning authority is charged with applying the Act to projects requiring local development approval.[1] To carry out that responsibility, local governments must "develop a local conservation program, consistent with the intent, requirements, and standards of" the Act and submit that program to DNR for its review and approval. NR § 5-1603(a), (b); *see* 77 *Opinions of the Attorney General* 127 (concluding that adoption of a forest conservation program is mandatory for local jurisdictions). Local

---

[1] The Act does not apply in a county that "has and maintains 200,000 acres or more of its land area in forest cover." NR § 5-1602(b)(10). When the statute was enacted, only Allegany and Garrett counties met the terms of the exemption. 86 *Opinions of the Attorney General* at 76. It is our understanding that those two counties remain exempt today.

programs must "meet[]" or be "more stringent than the requirements and standards of [the Act]." NR § 5-1603(a)(2), (c).[2]

The Act establishes a basic framework for determining how many trees must be retained, and how many may be removed, in connection with a land-development project. First, the law requires the applicant to submit a *forest stand delineation*. The delineation is prepared by a qualified professional and includes a map indicating the species, location, and size of the trees on the property and the dominant and codominant forest types. NR §§ 5-1601(p), 5-1604. Next, upon notice from the approving authority that the forest stand delineation is complete and correct, the applicant must submit a *forest conservation plan*. NR § 5-1605(a). This plan, again prepared by a qualified professional, must include a visual depiction of the forest conservation to be provided on the site, including areas where existing forest will be retained; areas where afforestation (planting in areas where there are presently no trees) is planned; an afforestation and reforestation plan with a timetable and description of the necessary site preparation; and a binding 2-year management plan detailing how afforested and reforested areas will be maintained. NR § 5-1605(b), (c). The applicant must obtain approval of the plan from the relevant agency before a subdivision plan or grading or sediment control permit may be approved or issued. NR § 5-1608.

In addition to its planning requirements, the Act also includes substantive afforestation provisions that require the landowner to plant trees in areas where none existed. *See* NR § 5-1606(a). The afforestation requirements vary with the land use category of the property. For example, lands zoned agricultural must be planted with trees sufficient to achieve 20% tree cover; lands zoned commercial must achieve 15% cover. NR § 5-1606(a)(1), (2). The Act also establishes *re*forestation requirements for all land use categories based on certain "conservation thresholds." NR § 5-1606(b). The conservation thresholds are defined as "the percentage of the net tract area at which the reforestation requirement increases from a ratio of ¼ acre planted for each acre removed, to a ratio of 2 acres planted for each acre removed." *Id*. As with afforestation, the reforestation requirements vary by land use category: for agricultural lands, the more aggressive requirements kick in once 50% of the tract is developed, whereas

---

[2] The Department is required to implement a State forest conservation program for State projects and in covered jurisdictions where there is no local plan in effect. *See* NR § 5-1603(d); COMAR 08.19.04.01A.

for commercial areas, those requirements kick in at 15%. NR § 5-1606(c). Each acre of forest retained above the threshold is credited against the total number of acres to be reforested. NR § 5-1606(d)(2). All afforestation and reforestation must be completed within one year or two growing seasons after completion of the development project. NR § 5-1606(a)(4), (f)(1).

Although the Act includes these basic substantive requirements, it generally leaves to the local jurisdictions (or the Department, with respect to developments that fall within the State's limited jurisdiction) the task of spelling out the details of how those requirements must be satisfied under their respective plans. For example, the Act sets forth a preferred sequence for afforestation and reforestation that looks first to on-site plantings, then plantings at other approved sites, and, when all other options are exhausted, payment to the State or local Forest Conservation Fund. NR §§ 5-1607(a), 5-1606(f)(2). The determination of how to apply that sequence, however, is made by the local authority. NR § 5-1607(a). Similarly, the details of how to carry out the Act's afforestation and reforestation requirements are left to the local authority to determine using certain methods enumerated in the statute. NR § 5-1607(b). The Act also leaves it to the local authority to develop provisions for preserving certain areas that are considered priorities for retention and protection. NR § 5-1607(e)(1).

## B. *Implementation of the Forest Conservation Act's Requirements*

The Forest Conservation Act was enacted in 1991 and became effective on July 1, 1991. *See* 1991 Md. Laws, ch. 255. The Department was directed to adopt regulations, including a technical guidance manual and a model ordinance, by December 31, 1991. NR § 5-1609. Thereafter, all units of government with planning and zoning approval had to submit a proposed forest conservation program to the Department by April 30, 1992. NR § 5-1603(a)(2). Following DNR approval of the proposed program, each such unit was directed to formally adopt the program and submit its adopted program to the Department by December 31, 1992. NR § 5-1603(b). The Department has continuing review authority over local programs and is directed to conduct biennial reviews of each authority's program. NR § 5-1603(e).

The initial deadlines for implementing the Act's requirements were tight. In late 1991, with input from stakeholders, including

local governments and the building industry, the Department promulgated regulations and a model ordinance, which became effective on January 20, 1992. 19:1 Md. Reg. 24 (1992); *see* COMAR 08.19.01-.06. Given the time constraints for adoption of local ordinances, most counties and municipalities initially adopted the model ordinance with minimal changes.

Since its enactment, the Act has been amended several times, and the Department has updated its regulations and model ordinance to reflect those statutory changes. Local governments, in turn, have revisited their local ordinances and, in the process of amending their ordinances, some have sought to deviate from the model ordinance and statutory requirements in an effort to protect more forested land. In reviewing these proposed differences, DNR has acknowledged that a local government may develop a program that is more stringent than the requirements and standards of the statute. For example, the Department has apparently approved broader criteria for plants and areas considered priority for retention, more explicit criteria for removal of priority forest, and more restrictive standards for the location of afforestation and reforestation.

It is our understanding, however, that the Department has informed local jurisdictions on at least two occasions that they may not establish conservation thresholds or reforestation ratios that vary from those set forth in the Act. The Department has also recently made its interpretation known to an environmental advocacy group that had inquired about the status of the City of Annapolis's local program. *See* Letter from Mark J. Belton, DNR Secretary, to Alison Prost, Chesapeake Bay Foundation (July 2, 2015) (stating that "the Forest Conservation Act does allow or enable local jurisdictions to craft forest conservation ordinances that include components that are more stringent than the statute," but that such components "may not alter the [conservation] thresholds and [reforestation] ratios established by [§] 5-1606").

## II

### Analysis

**A.  A Local Program May Impose a No Net Loss Policy and Other Forest Conservation Measures that Are More Stringent than the Act's Requirements.**

The extent to which local jurisdictions may enact forest conservation programs that are more stringent than State law is a matter of statutory construction. When construing statutes, we

follow familiar rules. As the Court of Appeals has explained, the "cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Stickley v. State Farm Fire & Cas. Co.*, 431 Md. 347, 358 (2013) (internal quotation marks omitted). Statutory construction "begins with the plain language of the statute," but considers that language within the context of the larger statutory scheme, for even "the plainest language is controlled by the context in which it appears." *Id.* at 358-59 (internal quotation marks omitted). Furthermore, "[w]ords may not be added to, or removed from, an unambiguous statute in order to give it a meaning not reflected by the words the Legislature chose to use . . . ." *Smack v. Dep't of Health and Mental Hygiene*, 378 Md. 298, 305 (2003).

The interpretation of the statute by the agency charged with applying it is entitled to "a certain amount of deference," *Motor Vehicle Admin. v. Salop*, 439 Md. 410, 421 (2014) (internal quotation marks omitted), with the weight to be accorded that interpretation dependent upon a number of considerations, including the extent to which the interpretation is contemporaneous and has been applied "consistently and for a long period of time," *Baltimore Gas & Elec. Co. v. Pub. Serv. Comm'n of Md.*, 305 Md. 145, 161 (1986). Also, the "nature of the process through which the agency arrived at its interpretation is a relevant consideration"; courts will give "little weight" to an agency interpretation that "is the product of neither contested adversarial proceedings nor formal rule promulgation." *Id.* at 161-62. Finally, "[a]n administrative agency's construction of the statute is not entitled to deference . . . when it conflicts with the unambiguous statutory language." *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 446 (1997). With these and other canons of statutory interpretation in mind, we now turn to the statute at hand.

> **1.  The Forest Conservation Act Allows Local Jurisdictions to Adopt Local Programs with Requirements that are More Stringent than State Law.**

The plain language of the Forest Conservation Act seems clear: Each local government unit with planning and zoning authority must develop and adopt a local forest conservation program that "meets *or is more stringent than* the requirements and standards of this subtitle." NR § 5-1603(a)(2) (emphasis added); *see also* NR § 5-1603(c) (same). In authorizing greater stringency, § 5-1603 does not specify any particular "requirement" or

"standard" or any particular part of a local program; it simply refers to the "requirements and standards" of the Act. In the absence of a definition of "requirements and standards" that limits those terms to particular aspects of the statute, this provision would seem to cover *all* of the statutory provisions that govern the preservation and augmentation of forest cover. Under the plain language, then, local programs may include requirements and standards that are more stringent than those set forth in the Act.

As it explains in its July 2015 letter, the Department has interpreted the statute somewhat differently. It reads the "more stringent than" language of § 5-1603 as inapplicable to the "conservation thresholds" set forth in § 5-1606. The Department's reading rests primarily on the fact that § 5-1606, unlike other provisions of the Act, does not explicitly leave it to the State or local authority to establish the requirements that govern the forest conservation process. For instance, § 5-1607(b) provides that the standards for meeting afforestation or reforestation requirements "shall be established by the State or local program" using certain methods set out in the statute. Section 5-1607(a) provides the same for the preferred "sequence for afforestation and reforestation." Section 5-1606, by contrast, simply states what the amount of forest cover "shall be," declares that "[t]here is a forest conservation threshold established for all land use categories," and then defines what the forest conservation threshold "means." NR § 5-1606(a)(1), (b).

For several reasons, we conclude that the Department's interpretation is inconsistent with the plain language of § 5-1603, and that the conservation thresholds qualify as "requirements and standards" with respect to which a local jurisdiction may be stricter than the Act. First of all, in terms of nomenclature, we see no indication that the General Assembly intended to use the word "threshold" in § 5-1606 as a way of distinguishing it from the Act's other "requirements" and "standards." The conservation thresholds are themselves only a means of calculating the reforestation requirement for a particular project; they have no separate function, and thus no meaning, outside of that context. *See* NR § 5-1606(b) ("The forest conservation threshold means the percentage of the net tract area at which the *reforestation requirement* changes from a ratio of ¼ acre planted for every 1 acre removed to a ratio of 2 acres planted for every 1 acre removed." (emphasis added)). The conservation thresholds thus are merely part of a requirement that local jurisdictions may choose to make more stringent. *See* NR § 5-1610(f)(2), (i)(2) (referring to "afforestation or reforestation requirements"). Although the

thresholds themselves do not *require* landowners to do anything, they provide the standard for applying the statute's reforestation requirement in any given situation. Either way, the thresholds operate as "requirements" or "standards" that the State and local programs must incorporate. In sum, we see no reason, based on the terms used in the Act, to consider the conservation thresholds as anything other than part of the Act's "requirements" or "standards."

Furthermore, the General Assembly's use of the terms "requirements" and "standards" throughout the Act indicates that the two terms were meant to cover all aspects of the forest conservation program. For example, the statute provides that "[a] unit of local government having planning and zoning authority shall develop a local forest conservation program, consistent with the intent, requirements, and standards of this subtitle." NR § 5-1603(a)(1). If the conservation "thresholds" did not qualify as "standards" or "requirements," then local programs would not have to be consistent with those thresholds. That result would be inconsistent with legislative intent and the agency's practice. Similarly, the General Assembly directed the Department to prepare guidance manuals to assist local programs in carrying out the Act's requirements, NR § 5-1609(a)(1), and specified that "[a]ll provisions of the guidance manual that are not specifically noted as standards or minimum requirements shall be deemed recommendations by the Department for the development of the local program," NR § 5-1609(a)(2). The statute thus contemplates that the Department's guidance would cover two different things: "recommendations," which local programs may choose to incorporate into their programs, and "standards" or "minimum requirements," which the local programs must adopt. The statute does not contemplate a third category of conservation "thresholds" that, unlike "standards" or "requirements," a local program must adopt and yet may not exceed.

We recognize, as the Department has pointed out, that the statute authoritatively states that "'[t]here is a forest conservation threshold *established* for all land use categories,' NR § 5-1606(b), and that a forest conservation plan '*shall provide* for reforestation . . . *according to the formula set forth in subsection (b)* of this section,' NR 5-1606(c)." Belton Letter at 1 (emphasis in original). The language the Department emphasizes is clearly the language of *requirement* and, as applied to the Department, it operates as such. When called upon to implement a forest conservation program with respect to State projects and in local jurisdictions that

do not have an approved program in place, the Department may not stray from the conservation thresholds established in the Act. But local jurisdictions are specifically authorized to enact their own programs with provisions that are more stringent than the "requirements" of the Act, and nothing in § 5-1606 alters or calls into question that specific grant of authority.

Moving beyond terminology to substance, reading the statutory phrase "requirements and standards" to exclude the conservation thresholds would dramatically reduce the efficacy of the local programs' authority. As its name suggests, the purpose of the Forest Conservation Act is to conserve Maryland's remaining forests, a goal that the Act accomplishes principally through its afforestation and reforestation requirements. Those requirements are the heart of the statute's regulatory charge. If local jurisdictions are unable to enact programs that are more stringent with respect to those requirements, then the scope of § 5-1603 is diminished substantially.

Moreover, the types of regulatory decisions with respect to which the Department has traditionally allowed local jurisdictions to be more stringent than State law—things like more restrictive standards for acceptable planting stock or location of afforestation and reforestation—are already expressly left to the local jurisdictions to determine. *See*, *e.g.*, NR § 5-1607(a)(4) (allowing local jurisdictions to permit an alternative sequence for afforestation or reforestation "if necessary to achieve the objectives of a local jurisdiction's land use plans or policies or to take advantage of opportunities to consolidate forest conservation efforts"); § 5-1607(b) ("Standards for meeting afforestation or reforestation requirements shall be established by the State or local program . . . ."). The Department's interpretation thus tends to read § 5-1603's grant of power to localities to enact more stringent requirements out of existence, an interpretive result the Court of Appeals cautions against. *See Anderson v. Council of Unit Owners of Gables on Tuckerman Condo.*, 404 Md. 560, 571 (2008) (noting that an interpretation must "ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory" (internal quotation marks omitted)).

We also cannot square the Department's interpretation with our prior opinions on the Forest Conservation Act. Those opinions reflect that the essential purpose of the Act is to prompt *local* governments to enact *local* programs that protect and grow the State's forest cover through conservation, afforestation, and reforestation. As Attorney General Curran previously opined, "[t]he Forest Conservation Act reflects a legislative judgment that

the forest conservation program is best implemented and administered at the local level." 77 *Opinions of the Attorney General* at 129. By contrast, the State's program is a "limited, interstitial one," designed only as a "back-up" should a local jurisdiction fail to adopt an approvable program. *Id*. at 131-32. Excluding the conservation "thresholds" from the scope of § 5-1603(a) would lock local programs into the State requirements in a way that seems out-of-step with that legislative design.

Limiting the local jurisdictions' ability to enact more stringent forest conservation measures also seems inconsistent with the statutory provisions that grant those jurisdictions planning and zoning authority in the first place. Those provisions require charter counties, and non-charter counties and municipalities, to include within their comprehensive plans the "visions" set forth in § 1-201 of the Land Use Article and certain planning "elements," including "a sensitive areas element." Md. Code Ann., Land Use ("LU") §§ 1-406, 3-102. The "visions" set forth in § 1-201 include one for "resource conservation," so that "waterways, *forests*, agricultural areas, open space, natural systems, and scenic areas are conserved." LU § 1-201(10) (emphasis added). "Sensitive area elements" must "include the goals, objectives, principles, policies, and standards designed to protect sensitive areas from the adverse effects of development," LU §§ 1-408(a), 3-104(a), and "sensitive areas," in turn, are defined to include "agricultural or *forest* land intended for resource protection or conservation," LU § 1-101(o) (emphasis added). These provisions thus contemplate that local jurisdictions might include forest conservation measures within their comprehensive plans. And, when any local law or regulation adopted under the planning and zoning division of the Land Use Article conflicts with any other statute, local law, or other regulation, the provision that "imposes a more restrictive standard" controls. LU § 1-202(a), (b). The Land Use Article thus specifically allows local jurisdictions, in the exercise of their planning and zoning powers, to enact land use standards that are more stringent than those provided in State law. We see no reason to believe that the General Assembly, in requiring local jurisdictions to adopt forest conservation measures, intended to *limit* their traditional planning and zoning power with regard to those natural resources.

Although we conclude that the language of the Forest Conservation Act unambiguously allows local jurisdictions to adopt forest conservation measures that are more stringent than State law, we also consider the Act's legislative history because the

Department has suggested that it supports a contrary reading. The Department focuses on the fact that legislative findings declaring a "no net loss" policy were stripped from the bill, and that § 5-1606 was amended to change the afforestation requirement from "up to a minimum of 20%" to simply "up to 20%," suggesting that the afforestation requirements were not intended to serve as a floor only. *See* 1991 Md. Laws, ch. 255 (reflecting changes to bill, including § 5-1606(a), (b)).

Neither of these alterations in the bill's provisions bears on whether local governments may enact more stringent programs on their own. The deletion of the legislative findings discussing a "no net loss" policy suggests that the Legislature may have backed away from adopting a formal statewide policy, but it says nothing about the scope of local authority. Nor does the deletion of the phrase "a minimum of" from § 5-1606 address local authority. That deletion was part of a larger revision of the section that changed an across-the-board 20% afforestation requirement to the current two-tiered requirement of 20% afforestation for certain types of land, and 15% for others. *See* NR § 5-1606(a)(1), (2); 1991 Md. Laws, ch. 255 (reflecting changes to § 5-1606(a), (b)). The deletion of the "a minimum of" language might simply have reflected the fact that 20% was no longer the minimum afforestation requirement.

We find more compelling the absence of any indication in the legislative history that legislators or stakeholders believed that the conservation thresholds were excluded from the scope of the "more stringent" savings clause. To the contrary, what little there is on that clause describes it broadly enough to include conservation thresholds. *See*, *e.g.*, 1991 Leg., Reg. Sess., Senate Economic and Environmental Affairs Committee., S.B. 224, Floor Report at 1 ("Local governments must develop a local forest conservation program that meets or exceeds the State Program . . . ."); *id.*, Bill Analysis at 1 (stating that the bill would require local governments to submit "a forest conservation program which is equivalent to, or more stringent than, the provisions contained in the bill"); House Environmental Matters Committee, S.B. 224, Bill Analysis at 1 ("Localities must adopt forest conservation programs that meet or exceed State standards, following guidelines and criteria established in the bill."); *see also* DNR, S.B. 224 Bill Report at 2 (Jan. 29, 1991) (stating that local jurisdictions would have to develop programs "with standards at least as stringent as those set forth in the law"). In the months following enactment of the legislation, the Chairman of the House Environmental Matters Committee wrote to our Office objecting to the Department's

overzealous implementation of the Act in some respects, but had this to say about § 5-1603: "By December 31, 1992, local jurisdictions must submit adopted local programs *at least as stringent as the Act* to the Department." Letter from Del. Ronald A. Guns to Judson P. Garrett, Jr., Deputy Attorney General at 4 (Sept. 12, 1991) (emphasis added). Rather than exclude conservation thresholds from the scope of the "more stringent" clause, all of these descriptions read the clause broadly to allow local jurisdictions to be more stringent with respect to *any* aspect of the Act.[3]

In reaching this conclusion, we are mindful of the fact that the Department, in two instances described to us, has informed local jurisdictions that they could not adopt conservation thresholds different from those set forth in the Act. The Department's actions in those two instances, however, apparently did not amount to program denials or any other type of formal agency action. Instead, we are told, the agency expressed its view in informal comments on local program submittals and without elaborating on the interpretive grounds for its comment.[4] And while Secretary Belton's recent letter indicates that the Department's interpretation is contemporaneous and long-held, ultimately that interpretation must yield to the unambiguous language of the Act. *Marriott Employees*, 346 Md. at 446 ("An administrative agency's construction of the statute is not entitled to deference, however, when it conflicts with the unambiguous statutory language."). As we conclude above, the Act unambiguously allows local

---

[3] The fiscal and policy notes accompanying subsequent amendments to the Act similarly give the savings provision a broad construction. *See* 2009 Reg. Sess., S.B. 666, Revised Fiscal and Policy Note at 4 ("Enacted in 1991, the Forest Conservation Act provides a set of minimum standards that developers must follow when designing a new project that affects forest land. Local governments are responsible for making sure these standards are met, but they may choose to implement even more stringent criteria."); 2013 Reg. Sess., H.B. 706, Revised Fiscal and Policy Note at 2 (same).

[4] An agency interpretation that is adopted outside of a contested case hearing or a formal rule promulgation is entitled to a somewhat lesser degree of deference because it is untested by the administrative and legislative review that those proceedings involve. *See, e.g.*, *Evans v. State*, 396 Md. 256, 348 (2006) (discussing the importance of AELR Committee review for purposes of determining whether a proposed regulation complies with the legislative intent of the statute under which it is to be promulgated).

jurisdictions to enact forest conservation programs with "requirements and standards" that are more stringent than those set forth in the Act, and there is nothing in the Act or its legislative history that excludes conservation thresholds and reforestation ratios from that grant of authority.

In sum, we see nothing in the statute or legislative history indicating that the General Assembly understood the conservation thresholds to be something other than "standards or requirements" or that localities were not permitted to adopt more stringent thresholds. The words of § 5-1603, "construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning." *Montgomery County v. Fraternal Order of Police*, *Montgomery County Lodge 35*, *Inc*., 427 Md. 561, 572 (2012) (internal quotation marks omitted). We thus give effect to the statute as it is written and reiterate our conclusion from 2001: "Local governments with planning and zoning authority are required to develop local forest conservation programs that meet or exceed standards"—*all* standards—"under the Act." 86 *Opinions of the Attorney General* at 75.[5]

## 2. The Forest Conservation Act Allows, But Does Not Require, a Local Jurisdiction to Adopt a Local Program Reflecting a "No Net Loss" of Forest.

As discussed above, the bill that became the Forest Conservation Act originally included a legislative finding that would have established the "no net loss" of forest as statewide policy:

> It is the intent of the General Assembly that this Forest Conservation Act is to be implemented and coordinated with other State and local conservation, reforestation, and afforestation programs, statutes, and regulations as one part of a comprehensive strategy to achieve no net loss of forest cover in the State of Maryland.

1991 Md. Laws, ch. 255 (reflecting language deleted from § 5-1602). The deletion of this (and every other) finding might weigh against reading the statute to allow local jurisdictions to adopt a

---

5    Local programs may also be more stringent than the Department's model ordinance, which is designed to mirror the requirements of the statute. *See* NR § 5-1609(a)(1)(ii).

"no net loss" policy on its own, but not necessarily so.  There is a difference between declaring a *statewide* "no net loss" policy and allowing a local jurisdiction to adopt such a policy to guide its own land use and development processes.  Rejecting the first does not imply rejection of the second.  We find it more significant that the Legislature left in place the language authorizing a local jurisdiction to enact local programs that are more stringent than the State law.  If the State law does not provide for no net loss, there is nothing in the Act that prevents a local jurisdiction from doing so.

Furthermore, the deletion of the "no net loss" finding was not the end of legislative action on the issue; the General Assembly has since officially declared that State policy is to achieve no net loss of forest.  In 2009, the General Assembly directed the Department to cooperate with forestry-related stakeholder groups to "determine the meaning of no net loss of forest for the purposes of any state policy" and "develop proposals for the creation of a policy of no net loss of forest in the State."  2009 Md. Laws, ch. 298 (codified at NR § 5-104(a)).  The Department's subsequent report supported the DNR Sustainable Forestry Council's recommendation that the State implement initiatives that ensure that 40% of all land is covered by forest by 2020.  *See* 2013 Reg. Sess., H.B. 706, Revised Fiscal and Policy Note.  Based on that recommendation, the Legislature enacted the Forest Preservation Act of 2013.

The Forest Preservation Act declares it to be State policy "to encourage the retention and sustainable management of forest lands by . . . [a]chieving no net loss of forest."  NR § 5-102(b)(1); *see also* NR § 5-101(i) (defining "no net loss of forest" to mean "40% of all land in Maryland is covered by tree canopy").  The bill also makes various changes aimed at preserving forest land in the State.  It focuses on protecting forests through planning, encouraging private forest management through expanded tax credits, increasing flexibility in reforestation efforts, increasing forest fire responsibility, and improving compliance with the earlier Forest Conservation Act.

The 2013 legislation does not speak to the stringency of the requirements or standards that a local jurisdiction may include within its forest conservation program.  Nor does it compel or recommend that a local jurisdiction seek to achieve "no net loss" on a programmatic or project-by-project basis.  But it removes any possible implication that might have been created by the Legislature's deletion of the "no net loss" finding in 1991.  Given

that Maryland law now affirmatively "encourage[s]" a no net loss of forest, NR § 5-102(b)(1), we conclude that a local jurisdiction may enact a local forest conservation program that embodies a "no net loss" policy.

**B.     *A Local Jurisdiction Need Not Justify Its Decision to Enact a Program that Is More Stringent than the Forest Conservation Act, but the Department May Inquire into Whether the Local Program Is Consistent with, and Meets or is More Stringent than, the Requirements of the Act.***

Your last question asks whether the Department may require a jurisdiction to justify its decision to enact a local program that is more stringent than the Forest Conservation Act or the DNR regulations or model ordinance that implement it.   Where the requirement clearly meets and is simply more stringent than a corresponding State requirement, the answer is no and the inquiry ends there.  A local jurisdiction need not justify its choice to adopt a program that is more stringent than State law.

But it is not always this straightforward; a jurisdiction might start with the model ordinance, but alter many of its provisions in a way that makes the relative stringency of the local program difficult to determine.  For example, because a local program is designed to be implemented as part of a broader development review process, the local government may use terminology that is different from that used in State law.  Some changes in a proposed ordinance might appear to be more restrictive, others less so.  In order to make a determination as to whether the ordinance is "consistent with the intent, requirements, and standards" of the Act, NR § 5-1603(a), the Department may properly ask the local jurisdiction to explain how different aspects of its proposed program compare to the State law.

### III

### Conclusion

Local jurisdictions may enact forest conservation programs that are more stringent than the Forest Conservation Act. Accordingly, we conclude that a local jurisdiction, in the exercise of its planning and zoning powers, may require that development projects meet a "no net loss" standard of forest conservation and provide levels of reforestation and afforestation that are more protective of our State's forest cover than the standards and requirements set forth in the state law.  Should a local government elect to do so, it is not required to justify the greater level of

protection, but the Department may require the local jurisdiction to explain how its program is consistent with the intent, requirements, and standards of the Act.

Brian E. Frosh
Attorney General of Maryland

Adam D. Snyder
Chief Counsel, Opinions & Advice