*Pedro Steven Buarque de Macedo, et al. v. The Automobile Insurance Company of Hartford, Connecticut*, No. 52, September Term, 2021. Opinion by Biran, J.

**INSURANCE – MOTOR VEHICLE INSURANCE LAW – HOUSEHOLD EXCLUSIONS** – Section 5-806(b) of the Courts and Judicial Proceedings Article of the Maryland Code provides that the right of action by an unemancipated child against a parent (or vice versa) "may not be restricted by the doctrine of parent-child immunity or by any insurance policy provisions, up to the limits of motor vehicle liability coverage or uninsured motor vehicle coverage." The Court of Appeals held that the phrase "motor vehicle liability coverage" in this statute refers to coverage under a primary motor vehicle liability policy, not to coverage under a personal umbrella insurance policy. A household exclusion in a personal umbrella policy therefore is not void as contrary to statute.

Circuit Court for Montgomery County
Case No.: 463245V
Argued: May 10, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 52

September Term, 2021

---

PEDRO STEVEN BUARQUE DE
MACEDO, ET AL.

v.

THE AUTOMOBILE INSURANCE
COMPANY OF HARTFORD,
CONNECTICUT

---

Watts
Hotten
Booth
Biran
Eaves
Adkins, Sally D.
   (Senior Judge, Specially Assigned)
Getty, Joseph M.
   (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Biran, J.

---

Filed: August 11, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case arises from a tragic automobile accident. In February 2016, Michael Buarque de Macedo, his spouse Alessandra Buarque de Macedo, and one of their children, Thomas Buarque de Macedo, died in a two-car collision in Montgomery County, Maryland. Their remaining child, Helena Buarque de Macedo,[1] survived the crash but suffered permanent injuries. Because the family members have the same surname, we may at times refer to these and other members of the extended Macedo family by their first names. In doing so, we mean no disrespect.

Michael was driving one of the family vehicles when the accident occurred. He and Alessandra were the named insureds of a primary automobile liability insurance policy issued by The Travelers Indemnity Company ("TIC"). Michael alone was also the named insured of a personal liability umbrella policy issued by The Automobile Insurance Company of Hartford, Connecticut ("AIC"), the Respondent here. The umbrella policy contained a household exclusion provision that purported to preclude coverage for bodily injury or personal injury suffered by Michael or by individuals who were related to Michael and who resided in Michael's household.

The Petitioners before us are Helena, individually, and Steven Macedo, in his capacity as Helena's guardian and the Personal Representative of the Estates of Thomas and Alessandra. Steven and Helena (collectively, "the Macedos") filed a civil action in the

---

[1] The full names of the members of the family at issue in this case include "Buarque de Macedo." In the text of the Complaint that counsel for the plaintiffs filed in the circuit court, counsel referred to members of the family by their first names followed by "Macedo" (*e.g.*, "Steven Macedo"). From this point forward, when referring to the family's surname, we will do the same.

Circuit Court for Montgomery County asserting negligence, wrongful death, and survivorship claims against Michael's Estate and the State of Maryland (Counts I-VII). Count VIII of the Complaint sought a declaratory judgment that the provisions in Michael's umbrella policy that purport to exclude claims brought against the named insured by members of the same household are void as against public policy and contrary to statute, to the extent the exclusion would otherwise apply to claims brought on behalf of Thomas's Estate and Helena. After a hearing on the Macedos' and Travelers' cross-motions for summary judgment, the circuit court declared the household exclusion valid and enforceable. The circuit court entered a final judgment as to Count VIII and ordered Counts I-VII stayed until the coverage dispute in Count VIII is resolved on appeal.

The Court of Special Appeals affirmed the judgment of the circuit court, and the Macedos sought further review in this Court. For the reasons stated below, we will affirm the judgment of the Court of Special Appeals.

# I

## Background

### A. The Automobile Accident

On February 27, 2016, at approximately 6:55 p.m., Michael, Alessandra, and their two children, Thomas (18) and Helena (15), were involved in a devastating automobile accident while on their way to Walt Whitman High School in Bethesda, Maryland, to drop Helena off at a school play. Michael was driving one of the family cars, a Chevrolet Volt. A BMW sedan traveling at a very high rate of speed collided with the Volt as Michael attempted to make a left turn. Only Helena survived. She was transported from the scene

to the hospital where she underwent numerous emergency life-saving procedures. Helena sustained serious and permanent injuries as a result of the accident.

## B. The Insurance Policies

At the time of the accident, Michael and Alessandra were the named insureds of an automobile liability policy issued by TIC. Under this primary policy, the limit of liability coverage for bodily injury and property damage was $500,000 per accident. Additionally, Michael was the named insured of a "Personal Liability Umbrella Policy of Security" issued by AIC. TIC and AIC are both Travelers Property Casualty Companies. From this point forward, for the sake of simplicity, we will refer to both companies, individually and collectively, as "Travelers."

Under the umbrella policy, the limit of liability coverage was $2,000,000 per occurrence, as long as a primary automobile policy with limits of $500,000 per occurrence was in force. The umbrella policy also contained a household exclusion provision, stating that the policy did not apply to "bodily injury or personal injury to any person who is related by blood, marriage, or adoption to an insured and who is a resident of the household of that person; or bodily injury or personal injury to [the insured]." (Internal quotation marks omitted.)

Following the accident, Steven Macedo was named Helena's guardian and the Personal Representative of Alessandra's and Thomas's Estates. On October 12, 2016, counsel for Steven Macedo and Helena wrote to Travelers and demanded $500,000 under the primary policy and $2,000,000 under the umbrella policy to settle the Macedos' various survivorship, personal injury, and wrongful death claims.

3

In response to the Macedos' demand, Travelers acknowledged its obligation to pay $500,000 under the primary auto policy. However, Travelers asserted that the household exclusion applied under the umbrella policy: "Since Michael is the Named Insured and 'insured' under the Umbrella Policy and Alessandra, Thomas, and Helena were related by blood or marriage … and were residents of Michael's household, the household exclusion applies to preclude coverage for any and all claims made by Alessandra, Thomas, and/or Helena against Michael."

The Macedos and Travelers entered into a settlement agreement on June 16, 2017, under which Travelers agreed to pay the $500,000 policy limit under the primary auto policy. The Macedos reserved their rights to make a claim under the umbrella policy.

## C. The Circuit Court's Ruling

On February 13, 2019, the Macedos filed a civil action in the Circuit Court for Montgomery County. Counts I-VII of the complaint asserted negligence, wrongful death, and survivorship claims against Michael's Estate and the State of Maryland. Count VIII of the complaint sought a declaratory judgment against Travelers that the household exclusion in the umbrella policy was void as against public policy and contrary to statute to the extent it would otherwise apply to claims brought by the Macedos against Michael.

The Macedos and Travelers filed cross-motions for summary judgment as to Count VIII of the Complaint. The Macedos contended that the plain language of Maryland Code, Courts and Judicial Proceedings Article ("CJP") (2020 Repl. Vol.) § 5-806(b) renders void a household exclusion in an umbrella policy, up to the limits of the motor vehicle coverage

of the umbrella policy, as to personal injury and wrongful death claims made by unemancipated children or the estates of unemancipated children against their parents.

Section 5-806(b) provides:

> The right of action by a parent or the estate of a parent against a child of the parent, or by a child or the estate of a child against a parent of the child, for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle, as defined in Title 11 of the Transportation Article, may not be restricted by the doctrine of parent-child immunity or by any insurance policy provisions, up to the limits of motor vehicle liability coverage or uninsured motor vehicle coverage.

Following a hearing on August 2, 2019, the circuit court denied the Macedos' motion for summary judgment, declared the household exclusion in the umbrella policy "valid and enforceable," and therefore granted Travelers' motion for summary judgment. By Order entered October 1, 2019, the circuit court granted the Macedos' consent motion for an order directing the entry of final judgment on Count VIII and staying Counts I-VII "until the coverage dispute set forth in Count VIII is resolved in Maryland's appellate courts[.]"

### D. Appeal

On appeal, the Macedos renewed their argument that the plain language of CJP § 5-806 renders void a household exclusion in an umbrella policy, up to the limits of the motor vehicle coverage of the umbrella policy, with respect to personal injury and wrongful death claims made by unemancipated children or the estates of unemancipated children against their parents.

The intermediate appellate court disagreed with the Macedos' interpretation of CJP § 5-806(b). The court opined that the statute "is ambiguous when read in isolation.

5

However, when the statute is considered in the context of the statutory scheme of which it is a part, its meaning becomes clear – the phrase 'motor vehicle liability coverage' refers to a primary motor vehicle liability policy and not to an umbrella policy." *Macedo v. Automobile Ins. Co. of Hartford, Connecticut*, No. 1619, Sept. Term 2019, 2021 WL 4453477, at *11 (Md. Ct. Spec. App. Sept. 29, 2021).

The Macedos filed a petition for writ of *certiorari* in this Court, seeking review of the following question: "Does [CJP] § 5-806 render the household exclusion clause in an umbrella policy void, up to the limits of motor vehicle liability coverage, as to motor vehicle personal injury or wrongful death claims of unemancipated children or estates of such children against their parent?" On January 11, 2022, we granted the petition. *Macedo v. Automobile Ins. Co. of Hartford, Connecticut*, 477 Md. 148 (2022).

## II

### Discussion

"The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal." *Rossello v. Zurich Am. Ins. Co.*, 468 Md. 92, 102 (2020) (internal quotation marks and citations omitted). "In reviewing a grant of summary judgment under Md. Rule 2-501, we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Id.* at 102-03 (internal quotation marks and citation omitted).

There are no material disputes of fact at this stage of the case. Instead, resolution of this appeal depends entirely on the proper interpretation of CJP § 5-806, a question of law

that we review *de novo*. *See Pabst Brewing Co. v. Frederick P. Winner*, *Ltd.*, 478 Md. 61, 74-75 (2022).

## A. Relevant Provisions in the Insurance Article

The General Assembly has legislated comprehensive and detailed regulations relating to motor vehicle liability insurance, which are set forth in the Insurance Article. As we shall see, several provisions of the Insurance Article are relevant to the interpretation of CJP § 5-806(b).

The Insurance Article addresses motor vehicle liability coverage, uninsured motor vehicle coverage, and other primary-layer coverages in Title 19, Subtitle 5, "Motor Vehicle Insurance – Primary Coverage." Md. Code Ann., Ins. ("IN") (2017 Repl. Vol.) §§ 19-501 - 19-520. Nothing in this primary coverage subtitle substantively addresses tort liability. *See id.* § 19-502(d) ("This subtitle does not affect the right of a person to claim and sue for damages or losses that the person sustains as the result of a motor vehicle accident.").

What Subtitle 5 does do is set forth mandatory coverages that an insurer must include in a "motor vehicle liability insurance policy," as well as optional coverages that the insured may decline. These mandatory and optional coverages include: mandatory motor vehicle liability coverage, *id.* § 19-504; optional no-fault personal injury protection coverage, *id.* § 19-505; mandatory uninsured motorist ("UM") coverage, *id.* § 19-509; optional first-party collision coverage, *id.* § 19-512; and, beginning in 2017, optional enhanced underinsured motorist coverage, *id.* § 19-509.1.

Section 19-504 specifically addresses "minimum liability coverage": "Each motor vehicle liability insurance policy issued, sold, or delivered in the State shall provide the

7

minimum liability coverage specified in Title 17 of the Transportation Article." Title 17 of the Transportation Article, in turn, provides that the "owner of a motor vehicle that is required to be registered in this State shall maintain the required security for the vehicle during the registration period." Md. Code, Transp. ("TR") (2020 Repl. Vol.) § 17-104(b). That "form of security … is a vehicle liability insurance policy written by an insurer authorized to write these policies in this State." *Id.* § 17-103(a)(1). The policy must "provide for at least":

(1) The payment of claims for bodily injury or death arising from an accident of up to $30,000 for any one person and up to $60,000 for any two or more persons, in addition to interest and costs;
(2) The payment of claims for property of others damaged or destroyed in an accident of up to $15,000, in addition to interest and costs;
(3) Unless waived, … the benefits described under § 19-505 of the Insurance Article as to basic required primary coverage; [and]
(4) The benefits required under § 19-509 or § 19-509.1 of the Insurance Article as to required additional coverage[.]

*Id.* § 17-103(b). The first two subsections comprise the "minimum liability coverage" mandated by IN § 19-504. The third subsection refers to the waivable no-fault coverage (IN § 19-505). The fourth subsection refers to mandatory UM coverage and optional enhanced underinsured motorist coverage (IN §§ 19-509 and 19-509.1, respectively).

Parties may contract for primary liability or UM policy limits that are above the statutorily required minimum amounts. IN § 19-502(b) ("Neither this subtitle nor Title 17 of the Transportation Article prevents an insurer from issuing, selling, or delivering motor vehicle liability insurance policies that provide liability coverage in excess of the requirements of the Maryland Vehicle Law."). Subtitle 5 imposes two requirements on "liability coverage under a policy or binder of private passenger motor vehicle liability

8

insurance [that] exceeds the amount required under [TR] § 17-103." IN §§ 19-504(a) & 19-510(a)(1). First, the insurer "shall provide uninsured motorist coverage in an amount equal to the amount of the liability coverage," unless the first named insured waives the increased UM limit. *Id.* § 19-510(b). Second, the insurer "shall offer … coverage for claims made by a family member in the same amount as the liability coverage." *Id.* § 19-504.1(b). This means that, when a policy of "private passenger motor vehicle liability insurance" provides liability coverage above statutory minimums, the first named insured decides whether the UM limits will equal the increased liability coverage limits and whether the increased liability coverage (and, if accepted, the increased UM limits) will apply to family members' tort claims.

The Insurance Article contemplates the possibility of an umbrella policy providing optional UM coverage: "A policy that, as its primary purpose, provides coverage in excess of other valid and collectible insurance or qualified self-insurance may include the [UM] coverage provided for in this section." IN § 19-509(h)(1). No provision in Subtitle 5 mandates UM coverage or other coverage under umbrella policies.

## B. The *Stickley* Decision

In *Stickley v. State Farm Fire and Casualty Company*, 431 Md. 347 (2013), this Court interpreted the phrase "motor vehicle liability insurance" as used in IN § 19-504.1, and specifically considered whether an umbrella policy constitutes such "motor vehicle liability insurance." The Court answered that question in the negative.

The plaintiff in *Stickley* was a passenger in a motor vehicle driven by her husband. *Stickley*, 431 Md. at 350. The Stickleys were involved in an accident in which Mr. Stickley

9

was killed, and Mrs. Stickley was seriously injured. *Id.* at 350, 352. The Stickleys had a motor vehicle liability policy with coverage limits of $100,000 per person and $300,000 per accident with State Farm Auto. *Id.* at 352. Additionally, they had a Personal Liability Umbrella Policy with personal liability and uninsured motorist coverage of $2,000,000 issued by another State Farm affiliate. *See id.* As here, the umbrella policy contained a household exclusion. *See id.* at 352-53. After the accident, Mrs. Stickley filed claims under both policies. *Id.* at 353-54. State Farm offered Mrs. Stickley the full $100,000 in liability coverage provided under the primary policy, but denied Mrs. Stickley's claim for bodily injury under the umbrella policy, citing the household exclusion. *Id.* at 353.

Mrs. Stickley filed a complaint seeking a declaration that the umbrella policy's household exclusion violated IN § 19-504.1. *Id.* She argued that the umbrella policy was "private passenger motor vehicle liability insurance," and that State Farm therefore was required under IN § 19-504.1(b) to offer "coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy[.]" *Id.* Thus, according to Mrs. Stickley, the household exclusion contained in the umbrella policy was void under § 19-504.1. *Id.* at 353-54.

This Court held that the household exclusion in the Stickleys' umbrella policy was "a valid and enforceable contractual provision." *Id.* at 368. We explained:

> We begin by looking at the plain meaning of the phrase "policy or binder of *private passenger motor vehicle liability insurance*." (emphasis added). By its terms, a private passenger motor vehicle liability insurance policy refers to a specific type of *motor vehicle liability insurance* policy. These insurance policies have been held by this Court to "attach[] to automobiles and not to individuals." *Neale v. Wright*, 322 Md. 8, 16, 585 A.2d 196, 199-200 (1991). By contrast, a *personal* liability umbrella policy includes coverage for a

10

myriad of losses suffered by the insured. This might include coverage for losses resulting in "personal injury," such as false arrest, wrongful eviction, libel, and defamation of character. The personal liability umbrella policy might also include protection against excess judgments of third parties with regard to the operation of a motor vehicle. Therefore, umbrella policies attach generally to the insured, whereas private passenger motor vehicle liability insurance policies attach to the motor vehicle and protect against injuries and/or damages resulting from the operation of the motor vehicle.

*Id.* at 359-60.

We also emphasized that "a motor vehicle liability insurance policy is a type of primary policy that is required in the State." *Id.* at 360. We observed that such "[p]rimary policies of motor vehicle liability insurance attach immediately upon the happening of the occurrence giving rise to liability, and have been required with a mandated minimum amount of coverage since the General Assembly revised the State's automobile insurance laws in 1972." *Id.* (cleaned up). An umbrella policy, we explained, "is a supplemental form of insurance that is distinguishable from more specific primary policies, such as motor vehicle liability insurance or homeowner's insurance," *id.* at 360-61, in that it "provid[es] coverage that exceeds the basic or usual limits of liability." *Id.* at 361 (quoting *Umbrella Policy,* BLACK'S LAW DICTIONARY 808 (7th ed. 1999)). Thus, we observed, an umbrella policy is "not merely … an extension of the primary policy, but rather [is] a distinct and different form of coverage." *Id*. In addition, "the purpose of both forms of coverage are different." *Id.* Whereas "primary insurance attaches upon the happening of the occurrence that gives rise to liability," excess insurance (such as that provided by an umbrella policy) "attaches only after a predetermined amount of primary coverage has been exhausted." *Id.* (cleaned up); *see also id.* at 362 ("Umbrella policies serve an important function in the

11

industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium.") (quoting 8C APPLEMAN, INSURANCE LAW AND PRACTICE § 5071.65 (1981)).

We also examined the statute in context, noting that "[t]he subtitle at issue in the present case, '*Subtitle 5. Motor Vehicle Insurance—**Primary Coverage**'* (emphasis added)" includes other provisions that also refer to "motor vehicle insurance policies providing primary coverage." *Id.* at 362-63. In particular, we pointed to IN § 19-504, noting that the term "motor vehicle liability insurance policy" is used in that section to discuss the minimum amount of coverage required in a primary policy ("[e]ach motor vehicle liability insurance policy ... shall provide the minimum liability coverage specified in Title 17 of the Transportation Article."). *Id.* at 363 (quoting IN § 19-504). Similarly, IN § 19-505 "discusses the required *minimum* amount of personal injury protection ("PIP") coverage in a 'motor vehicle liability insurance policy.'" *Id.* (emphasis in original). We reasoned that, by including § 19-504.1 within the subtitle that governs primary layer automobile liability policies, "the General Assembly demonstrated its intention to address household exclusions in primary policies." *Id.* Thus, "[i]t would be illogical to interpret the phrase 'motor vehicle liability insurance policy' in [§ 19-504.1] as referring to umbrella policies, because umbrella policies, by definition, are supplemental and serve as an excess form of coverage to motor vehicle primary policies." *Id.* Indeed, we observed, the only provision in Subtitle 5 that addresses excess coverage (such as an umbrella policy), IN § 19-509(h)(1), "explicitly refers to policies that are different in kind from primary policies …, discuss[ing] policies whose '*primary purpose* [] provides coverage in excess'

12

of other forms of insurance.'" *Id.* at 364 (second alteration by the Court). "By its own terms, therefore, § 19-509(h)(1) explicitly distances itself from the primary motor vehicle policies discussed elsewhere in the section." *Id.*

We also explained that a contrary holding would lead to "a result that is unreasonable, illogical, or inconsistent with common sense." *See id.* at 365. Applying this "common sense approach," we noted "that the fundamental difference between umbrella and motor vehicle policies is underscored by the difference in premiums charged for the different coverages." *Id.* "In general, umbrella policy premiums are relatively small in relation to the amount of risk so that the company cannot be expected to prorate with other excess coverages; and public policy should not demand that this be done." *Id.* (quoting COUCH ON INSURANCE 3d § 220:32 (2005)).

## C. The Proper Interpretation of CJP § 5-806(b)

With this background in mind, we now turn to the parties' arguments concerning the meaning of CJP § 5-806(b). The Macedos contend that the plain language of the statute renders void an umbrella policy's household exclusion, up to the limits of the umbrella policy's motor vehicle liability coverage, with respect to tort claims by unemancipated children against their parents.

Travelers counters that the Macedos' interpretation conflicts with the text, structure, and legislative history of CJP § 5-806. Travelers argues that the language of CJP § 5-806 cannot be interpreted in a vacuum, but rather must be viewed in conjunction with pertinent provisions of the Insurance Article. When those provisions are considered, according to Travelers, it is clear that the phrase "motor vehicle liability coverage" in CJP § 5-806

13

(similar to the phrase "motor vehicle liability insurance" in IN § 19-504.1) refers to primary automobile liability coverage, not to coverage provided under a personal umbrella policy.

The goal of statutory interpretation is to "ascertain and effectuate the actual intent of the General Assembly in enacting the law under consideration." *Pabst Brewing Co.*, 478 Md. at 75 (internal quotation marks and citation omitted). In conducting our analysis, "we begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (internal quotation marks and citations omitted). If the statutory language is "unambiguous and clearly consistent with the statute's apparent purpose, [the] inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). We construe the statute "as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park*, 392 Md. 301, 316 (2006).

Our analysis is "not confined to the specific statutory provision at issue on appeal." *Berry v. Queen*, 469 Md. 674, 687 (2020). Instead, "the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute." *Id.* (internal quotation marks and citations omitted). "To this end, it may be beneficial to analyze the statute's relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the

14

particular language before us in a given case." *Id.* (internal quotation marks and citations omitted).

"Where statutory language is ambiguous and thus subject to more than one reasonable interpretation, or where the language is unambiguous when read in isolation, but ambiguous when considered in the context of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Hector v. Bank of New York Mellon*, 473 Md. 535, 576 (2021) (internal quotation marks and citation omitted).

Further, we "check our interpretation against the consequences of alternative readings of the text," *Bell v. Chance*, 460 Md. 28, 53 (2018), which "grounds the analysis." *In re O.P.*, 470 Md. 225, 255 (2020). Doing so helps us "avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense," *Mayor & Town Council of Oakland*, 392 Md. at 316; *see also Bell*, 460 Md. at 53 (explaining that, throughout the statutory interpretation process, "we avoid constructions that are illogical or nonsensical, or that render a statute meaningless").

1. The Statutory Text

CJP § 5-806, in full, provides:

> (a) This section applies to:
>
>> (1) An action by an unemancipated child against a parent of the child; and
>>
>> (2) An action by a parent against an unemancipated child of the parent.

15

> (b) The right of action by a parent or the estate of a parent against a child of the parent, or by a child or the estate of a child against a parent of the child, for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle, as defined in Title 11 of the Transportation Article, may not be restricted by the doctrine of parent-child immunity or by *any insurance policy provisions, up to the limits of motor vehicle liability coverage or uninsured motor vehicle coverage*.

CJP § 5-806 (emphasis added).

The Macedos argue that the plain language of CJP § 5-806 requires us to conclude that this statute applies to umbrella policies, inasmuch as it applies to "any insurance policy provisions, up to the limits of motor vehicle liability coverage." The Macedos point out that "any" does not mean "some," but rather means "any and all." And they argue that because their umbrella policy included excess motor vehicle liability coverage, § 5-806 by its plain language renders the household exclusion void up to the $2,000,000 policy limit.

Travelers contends that the text of § 5-806, when viewed in the context of relevant provisions in the Insurance Article, demonstrates the General Assembly's intent to limit application of the provision to the mandatory primary layer auto coverages. Thus, according to Travelers, § 5-806(b)'s language "is an imperfect but clear reference to [IN § 19-504's] requirement that 'each motor vehicle liability insurance policy issued, sold, or delivered in the State shall provide the minimum liability coverage specified in Title 17 of the Transportation Article.'" (Emphasis deleted.)

We cannot say that the Macedos' reading of § 5-806(b) is unreasonable. The household exclusion in Michael's umbrella policy is an "insurance policy provision" and the umbrella policy provides excess "motor vehicle liability coverage." Thus, if we were

16

to read § 5-806(b) without reference to any other provisions or authorities, we likely would agree with the Macedos that the language of § 5-806 reflects an intent to void household exclusions in umbrella policies as to claims brought by unemancipated children against their parents (and vice versa) for motor vehicle torts.

But we do not read CJP § 5-806 in a vacuum. Rather, § 5-806(b) must be read in conjunction with the relevant provisions of Title 19 of the Insurance Article, Subtitle 5.[2] That review leads us to conclude that Travelers' interpretation of § 5-806(b) as applying only with respect to mandatory primary coverages is also reasonable.

It is significant that the General Assembly referred to "motor vehicle liability coverage *or uninsured motor vehicle coverage*" in CJP § 5-806(b). (Emphasis added.) Motor vehicle liability coverage and uninsured motor vehicle coverage are the two mandatory coverages in a primary "motor vehicle insurance policy." *See* IN §§ 19-504, 19-509; *see also id.* § 19-504.1 (referring to a "policy … of motor vehicle liability insurance"). Section 5-806(b)'s reference to UM coverage arguably is a strong indicator that the phrase "motor vehicle liability coverage" in § 5-806(b) refers to the other statutorily required primary liability coverage and not to optional excess coverage.

Tellingly, Subtitle 5's only reference to excess coverage, such as an umbrella policy, is found at IN § 19-509(h)(1), which provides that such a policy "*may include* the [UM]

---

[2] Indeed, the General Assembly has provided that the "provisions of [the Insurance Article] supersede any inconsistent provision of any other part of the Code." IN § 1-206. Given the legislatively mandated supremacy of the Insurance Article as to matters addressed within it, we would be derelict in our duty if we did not consider whether the parties' interpretations are inconsistent with relevant provisions of the Insurance Article.

17

coverage provided for in this section." (Emphasis added.) Nothing in the Insurance Article mandates an insurer to provide excess coverage for claims made by household members of an insured who chooses to obtain an umbrella policy. To the extent § 5-806(b) could be read to impose such a requirement, it would do so without a cross-reference in the Insurance Article acknowledging this substantive change to Maryland insurance law. That seems an unlikely scenario, given that the Insurance Article explicitly incorporates and/or cross-references provisions in other parts of the Maryland Code that substantively address insurance law.[3]

Travelers also draws substantial support for its reading of § 5-806(b) from *Stickley*. Mrs. Stickley's argument, which this Court rejected, strongly resembles the Macedos' argument here. This Court held in *Stickley* that an umbrella policy is not "motor vehicle liability insurance" within the meaning of IN § 19-504.1. *Stickley*, 431 Md. at 351. We emphasized that "a private passenger motor vehicle liability insurance policy refers to a specific type of *motor vehicle liability insurance* policy," which "attach[es] to automobiles and not to individuals." *Id.* at 359 (internal quotation marks and citation omitted). "By

---

[3] In particular, IN § 19-101 provides:

(a) In addition to any requirement of this article and to the extent not inconsistent with this article, a workers' compensation insurance policy is subject to Titles 9 and 10 of the Labor and Employment Article.

(b) In addition to any requirement of this article and to the extent not inconsistent with this article, a motor vehicle liability insurance policy is subject to the Maryland Vehicle Law.

A cross-reference states: "For present provisions concerning the Maryland Vehicle Law, see Titles 11 through 27 of the Transportation Article."

contrast, a *personal* liability umbrella policy includes coverage for a myriad of losses suffered by the insured." *Id.* It is a "supplemental form of insurance that is distinguishable from more specific primary policies, such as motor vehicle liability insurance or homeowner's insurance." *Id.* at 360-61. *Stickley*'s observations about umbrella policies are equally apt in this case.

Moreover, it is difficult to distinguish the language that the General Assembly used in IN § 19-504.1 ("policy … of private passenger motor vehicle liability insurance") from that of CJP § 5-806(b) ("motor vehicle liability coverage"). Given that IN § 19-504.1(b) immediately goes on to refer to "liability coverage" provided under "a policy … of private passenger motor vehicle liability insurance," one could reasonably conclude that the Macedos' argument is based on a distinction without a difference. An insurance "policy" may encompass several different "coverages." Certainly, *Stickley* did not turn on the type of fine distinction the Macedos urge here, but rather was driven by the substantive differences between umbrella policies, which are personal liability policies, and "motor vehicle liability" policies, which are primary auto liability policies. Notably, the General Assembly has acquiesced in *Stickley*'s recognition of the "fundamental difference between umbrella and motor vehicle policies," 431 Md. at 365, by not legislatively overturning *Stickley* in the nine years since we decided that case. *See Lawrence v. State*, 475 Md. 384, 414 (2021) ("The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation.") (internal quotation marks and citation omitted).

19

Although Travelers' textual analysis has much to recommend it, ultimately it is not dispositive. Unlike IN § 19-504.1, which is part of IN Title 19, Subtitle 5, and therefore can be expected to address primary auto liability policies, CJP § 5-806 is not surrounded by other provisions that specifically govern primary policies. Thus, although certainly relevant to the analysis, *Stickley* does not answer the question whether the General Assembly intended to sweep more broadly in CJP § 5-806 than it did with respect to IN § 19-504.1. At this first stage of our interpretative analysis, we cannot rule out the possibility that the General Assembly intended to require insurance companies that offer umbrella policies to treat claims by unemancipated children against parents (and vice versa) the same as claims by nonfamily members. That being the case, we conclude that the phrase "motor vehicle liability coverage" in CJP § 5-806(b) is ambiguous. Accordingly, we must consider the legislative history of this provision.

2. <u>Legislative History</u>

   a. *The doctrine of parent-child immunity*

To put the legislative history of CJP § 5-806 in context, we first review the pertinent history of parent-child immunity in Maryland. This Court adopted the doctrine of parent-child tort immunity in *Schneider v. Schneider*, 160 Md. 18 (1930). *See Allstate Ins. Co. v. Kim*, 376 Md. 276, 281 (2003) (describing *Schneider*'s holding as "barr[ing] an action by a mother against her minor son for injuries arising from an automobile accident caused by her son's negligent driving"). In *Warren v. Warren*, 336 Md. 618, 622 (1994), this Court

20

explained that, in deciding *Schneider*, "[w]e fashioned a broad reciprocal immunity under which parents and children could not assert *any* claim for civil redress."

By 1994, when this Court decided *Warren*, most States that had adopted the doctrine of parent-child tort immunity had either abrogated it entirely, or had made it inapplicable to motor torts. *Allstate Ins. Co.*, 376 Md at 282. Although Maryland was increasingly isolated in its attachment to this doctrine, this Court "steadfastly refused to abolish it and consented to only three exceptions to it." *Id*.[4] We rejected "several entreaties to add an additional exception for actions arising from motor torts, despite the existence of limited compulsory insurance in Maryland." *Id*. (referencing *Frye v. Frye*, 305 Md. 542 (1986); *Warren*, 336 Md. at 618; *Renko v. McLean*, 346 Md. 464 (1997); and *Eagan v. Calhoun*, 347 Md. 72, 81 (1997)). In these cases, the Court "expressed the beliefs that exclusion of motor torts from the immunity doctrine would inevitably have some impact on the compulsory insurance program mandated by the Legislature and that, if an exception of that kind was to be made, it should be created by the General Assembly after an examination of appropriate policy considerations in light of the current statutory scheme." *See Allstate Ins. Co.*, 376 Md. at 282-83 (internal quotation marks and citations omitted).

---

[4] "In *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951), we held that a minor child who had suffered from cruel, inhuman, or outrageous conduct at the hands of a parent could sue that parent for money damages. In *Waltzinger v. Birsner*, 212 Md. 107, 128 A.2d 617 (1957), we held that an emancipated child could sue his parent for claims arising after the child reached majority, and, in *Hatzinicolas v. Protopapas*, 314 Md. 340, 550 A.2d 947 (1988), we allowed a child to sue the business partner of his parent for negligence committed in the operation of the partnership." *Allstate Ins. Co.*, 376 Md. at 282.

*b. CJP § 5-806*

After this Court rejected another proposed exception to parent-child immunity for motor torts in 1997 in *Renko*, the General Assembly "immediately renewed efforts to create such an exception by statute." *Allstate Ins. Co.*, 376 Md. at 283. In the 2001 legislative session, the General Assembly passed House Bill 183 ("HB 183") (2001 Md. Laws, Ch. 199), which added § 5-806 to the Courts and Judicial Proceedings Article. The original version of CJP § 5-806 provided:

> The right of action by a parent or the estate of a parent against a child of the parent, or by a child or the estate of a child against a parent of the child, for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle ... may not be restricted by the doctrine of parent-child immunity or by any insurance policy provisions, *up to the mandatory minimum liability coverage levels required by § 17-103(b) of the Transportation Article.*

*Allstate Ins. Co.*, 376 Md at 283 (emphasis added).

The Floor Report for HB 183 stated: "This bill abrogates the common law doctrine of parent-child immunity up to the mandatory minimum motor vehicle liability insurance coverage levels ($20,000/$40,000)." (Capitalization deleted.)

*c. IN § 19-504.1*

In 2004, the General Assembly enacted IN § 19-504.1. As discussed above, § 19-504.1 requires that when liability coverage under a policy of "private passenger motor vehicle liability insurance" will exceed the minimum coverage requirements of TR § 17-103, an insurer must offer liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a non-family member under the policy.

22

The enactment of IN § 19-504.1 created an inconsistency in the treatment of unemancipated children compared with other family members regarding claims against primary auto liability policies. Under IN § 19-504.1, if an insured, in purchasing a primary auto policy, chose to purchase coverage for claims by family members equal to coverage for claims by non-family members, the insurance coverage in an action between a parent and a family member other than an unemancipated child was up to the policy limits. Those policy limits, of course, could be higher than the mandatory minimum policy limits set forth in TR § 17-103. However, under the then-operative version of CJP § 5-806, in an action between a parent and an unemancipated child, parent-child immunity would bar a claim against a primary auto policy above the statutorily mandated minimum primary coverages.

### d. 2005 Amendment to CJP § 5-806

In the 2005 session, the General Assembly amended CJP § 5-806. 2005 Md. Laws, Ch. 415 (HB 1081) (eff. Oct 1, 2005). The change to the statute was the result of cross-filed bills House Bill 1081 and Senate Bill 683. As is a customary practice, Governor Robert L. Ehrlich, Jr., signed one bill – HB 1081 – and vetoed the second – SB 683 – as duplicative. The bill provided that the statute would be amended as follows (prior language stricken, new language in italics):

> The right of action by a parent or the estate of a parent against a child of the parent, or by a child or the estate of a child against a parent of the child, for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle, as defined in Title 11 of the Transportation Article, may not be restricted by the doctrine of parent-child immunity or by any insurance policy provisions, up to the ~~mandatory minimum liability~~

~~coverage levels required by § 17–103(b) of the Transportation Article~~ *limits of motor vehicle liability coverage or uninsured motor vehicle coverage.*

The Macedos acknowledge that, prior to the 2005 amendment, CJP § 5-806(b) only voided restrictions in primary auto policies and only up to the mandatory minimum liability coverage levels required by TR § 17-103(b). According to the Macedos, by removing the explicit reference to TR § 17-103(b) from the statute, the General Assembly demonstrated its intent to untether CJP § 5-806 from primary auto policies and to expand the abrogation of parent-child immunity to all motor vehicle liability coverage, including excess coverage contained in umbrella policies.

The legislative history of the amendment paints a different picture. The Senate Floor Report states:

> This bill expands the abrogation of the doctrine of parent-child immunity as it applies to actions for wrongful death, personal injury, or property damage arising from the operation of a motor vehicle, *up to the limits of motor vehicle liability coverage or uninsured motor vehicle coverage, as opposed to the statutory limits….*

> Chapter 199 of 2001 [CJP § 5-806] partially abrogated the doctrine of parent-child immunity. Under [CJP § 5-806], an action between a parent and a child or the estate of a parent or child for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle may not be restricted by the doctrine of parent-child immunity or any insurance policy provisions, up to the State's mandatory minimum coverage limits. In *Bozman v. Bozman*, 376 Md. 461 (2003), the Court of Appeals completely abrogated the doctrine of interspousal tort immunity in Maryland.

> State law requires minimum vehicle liability insurance coverage of (1) $20,000 for one person and $40,000 for two or more persons for bodily injury or death; and (2) $15,000 for property damage.

> ....

> Testimony indicated that the bill would have little or no impact on auto insurance premiums and would provide *equal treatment for minor children who may be injured due to the driving negligence of their parents*.

Floor Report, House Bill 1081, Courts – Parent-Child Immunity – Motor Vehicle Torts, Senate Judicial Proceedings Committee, 2005 Maryland General Assembly at 1-2 (emphasis added). The reference in the first paragraph quoted above to the "limits of motor vehicle liability coverage" in juxtaposition with ("as opposed to") "the statutory limits" indicates that the General Assembly understood "motor vehicle liability coverage" to refer to primary auto liability policy coverage, as to which the statutory limits apply if the insured does not purchase higher limits.

Also notable is the Floor Report's reference to this Court's abrogation of the doctrine of interspousal immunity in *Bozman*. Given that decision, it was clear that an insurance policy could not limit a spouse's recovery under a primary policy to the mandatory minimum limits if the insured chose to purchase higher limits. The treatment of spouses with respect to primary auto policies is an instructive reference point when considering what the Floor Report meant in referring to "equal treatment for minor children" a little later in the Floor Report.

The Senate Bill's sponsor, Senator Robert J. Garagiola, made the point more explicitly in his testimony to the Judicial Proceedings Committee:

> Under Maryland Common Law, minor children and their parents are barred from suing one another. Unlike most common law immunities, which have been abrogated by judicial decisions, the only change in the parent child immunity occurred by legislative enactment several years ago.
>
> Under that legislation, which went into effect October 2001, an unemancipated child may file suit against a parent for injuries caused by the

25

parent's negligence in operating a motor vehicle, up to the mandatory minimum coverage of $20,000, but not above that amount....

*In 2004, this legislature passed legislation [Ins. § 19-504.1] that requires carriers to offer coverage for claims made by family members who are injured in auto accidents caused by the negligence of their spouse, sibling, etc.* The impact of this bill on insurance premiums has been negligible. For example, for some the increase for coverage of $100,000/$300,000 has been $0, for others $500,000 coverage has increased the premium $2/month.

It is clear that to pass SB 683 will have little or no impact on auto insurance premiums, and will provide *equal treatment to our minor children who may be injured due to the driving negligence of their parents.*

Sen. Rob Garagiola, Statement on SB 683 (Mar. 31, 2005) (emphasis added). It is clear that Senator Garagiola understood "equal treatment to our minor children" to mean equal to the treatment other family members now had with respect to primary auto policies after the passage of IN § 19-504.1.

The Maryland State Bar Association ("MSBA") also supported the amendment. MSBA's director of legislative relations, Richard A. Montgomery III, echoed Senator Garagiola's point about IN § 19-504.1:

Due to legislation [Ins. § 19-504.1] that was passed in 2004, insurance coverage has been extended to include members in a familial unit, such as spouses and siblings. *SB 683 seeks to extend this coverage to unemancipated children, who under this bill would not be subject to the statutory limit of $20,000.* History has shown that increasing insurance coverage for the injured spouses and siblings of negligent drivers does not yield a higher premium. As this bill will offer *equal treatment to minors who may be injured as a result of their parents' actions*, the MSBA supports SB 683 and urges a favorable committee report.

Richard A. Montgomery III, Memorandum to House Judiciary Committee, SB 683 (Mar. 31, 2005) (emphasis added; other emphasis deleted).[5]

The pertinent legislative history makes clear that the General Assembly's intention in amending CJP § 5-806(b) was to put unemancipated children on an equal footing with other family members with respect to claims under primary auto policies. The enactment of IN § 19-504.1 was the catalyst for the amendment of CJP § 5-806. As this Court explained in *Stickley*, the General Assembly intended IN § 19-504.1 only to require insurers to offer higher coverage limits to family members with respect to mandatory auto liability coverages. This persuades us that CJP § 5-806, as amended, is intended only to provide parents and their children with a way to reach negotiated policy limits for the mandatory liability and UM coverages.

### 3. The Consequences of the Macedos' Interpretation of CJP § 5-806

Our construction of the statute is confirmed when we compare the possible consequences of both parties' proposed interpretations of CJP § 5-806. In so doing, we attempt to "avoid a construction of the statute that is unreasonable, illogical, or inconsistent

---

[5] In this case, the Court of Special Appeals "recognize[d] that 'position statements by ... interest groups are not infallible guides to the intent of the Legislature.'" *Macedo v. Automobile Ins. Co. of Hartford, Connecticut,* No. 1619, Sept. Term 2019, 2021 WL 4453477, at *10 n.14 (Md. Ct. Spec. App. Sept. 29, 2021) (quoting *Hayden v. Maryland Dep't of Nat. Res.*, 242 Md. App. 505, 532 (2019)). However, the court aptly noted that "such statements can be useful in identifying the problem confronting the Legislature." *Id.* The intermediate appellate court observed that "MSBA's statement is consistent with the other materials in the legislative history because it indicates that the problem before the General Assembly was the disconnect between insurance coverage for claims made by adult members of a household (the subject of [IN] § 19-504.1) and the limitations imposed by the then-existing version of [CJP § 5-806]." *Id.*

27

with common sense." *Walzer v. Osborne*, 395 Md. 563, 573 (2006) (quoting *Blake v. State*, 395 Md. 213, 224 (2006)).

> In this regard, the Court of Special Appeals observed:
>
> Accepting [the Macedos'] reading of the statute would permit unemancipated children to recover damages up to the combined limits of the primary motor vehicle policy as well as any umbrella policy. As we have explained, the insurance coverage available to *emancipated* children injured by a parent or sibling is limited to the amount of the primary motor vehicle policy. *See Stickley* [], 431 Md. at 368. If the General Assembly's intent in enacting the 2005 amendment to § 5-806 was to equalize the way that insurance coverages apply to emancipated and unemancipated members of a household – and it was – it would be illogical for the Legislature to skew the balance in favor of unemancipated household members.

*Macedo*, 2021 WL 4453477, at *11 (emphasis added). The Macedos respond by asserting that the General Assembly favored unemancipated children due to their lack of earning ability, inability to obtain their own insurance, and overall dependency on their parents. Again, however, the legislative history speaks of equal treatment for minor children, not preferential treatment. As we held in *Stickley*, in the event of a household exclusion, spouses do not receive the benefit of excess motor vehicle liability coverage under an umbrella policy. Thus, equal treatment for minor children meant abrogating parent-child immunity up to the negotiated policy limits for mandatory coverages. If the Macedos' interpretation of the amended CJP § 5-806 is correct, then the General Assembly intended to put unemancipated children not in an equal position, but rather in a better position, than spouses and emancipated children with respect to umbrella policies. Had that been the intent, it undoubtedly would have generated mention somewhere in the legislative history. The legislative history of the 2005 amendment to CJP § 5-806 contains nothing of the sort.

Moreover, CJP § 5-806 applies not only to claims by unemancipated children against their parents, but also to claims by parents against their unemancipated children. There is no textual basis to distinguish between child-parent and parent-child claims. Indeed, as discussed above, the case in which this Court first adopted the doctrine of parent-child immunity involved a mother being injured while her 16-year-old son was driving. *See Schneider*, 160 Md. at 18. If children's claims against their parents were to override umbrella policies' household exclusions, so would parents' claims against their minor children. There is no reason we can imagine why the General Assembly would allow parents' claims against their children to draw upon excess motor liability coverage, while at the same time allowing household exclusions to operate to bar such coverage for interspousal motor vehicle liability claims.

Finally, as Travelers notes, when the General Assembly passed IN § 19-504.1 in 2004, it required the Commissioner to "study the impact on motor vehicle liability insurance rates as a result of requiring insurers to offer to the first named insured liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member, as provided under this Act," and to report on those findings after the law had been in effect for three years. 2004 Md. Laws, Ch. 127 (SB 460) § 2. Travelers contends that "[i]t defies logic … to postulate that, a few months into this three-year period for studying the impact of *optional* household coverage under primary policies, the Legislature chose to *mandate* coverage for certain household claims under any policy, much less an umbrella policy." The Macedos offer no response to this observation.

Every source we have reviewed demonstrates that, at the time of the amendment to CJP § 5-806(b) in 2005, no stakeholders believed that the amendment would expand the scope of the provision to cover supplemental insurance, such as an umbrella policy. We are convinced that the General Assembly understood and intended that CJP § 5-806 would continue to apply only to the primary coverages that are mandatory under the Insurance Article.

## III

## Conclusion

As the Macedos note, in *Stickley* this Court stated that the General Assembly has the power to provide "something closer to complete insurance recovery for all victims[.]" *Stickley*, 431 Md. at 367 (quoting *Stearman v. State Farm Auto Ins. Co.*, 381 Md. 436, 450 (2004)). However, the General Assembly did not provide for complete insurance recovery by unemancipated children when it amended CJP § 5-806 in 2005. The purpose of the amendment was to provide equal treatment for family members with respect to primary auto coverages. The circuit court correctly held that the household exclusion in Travelers' umbrella policy is valid and enforceable, and therefore properly granted summary judgment to Travelers on Count VIII of the Macedos' Complaint. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**